C.M., Individually and as Next Friend of L.M. a Minor Child, Appellants,

v.

**TOMBALL REGIONAL HOSPITAL, Albert D. Friday, Jr., and Mary Ruckman, Appellees.**

No. 01–95–00623–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 17, 1997.

Rehearing Overruled June 10, 1997.

Gerald E. Bourque, Spring, for Appellant.

Jeffrey B. McClure, Jeffrey Donald Meyer, Houston, for Appellee.

Before MIRABAL, COHEN and HEDGES, JJ. ·

## OPINION

MIRABAL, Justice.

This case involves claims of (1) violations of 42 U.S.C. § 1395 dd (the Emergency Medical Treatment and Active Labor Act or "EMTA-LA"[1]); (2) invasion of privacy under 42 U.S.C. § 1983 ("Section 1983"); (3) and intentional infliction of emotional distress. The claims arise out of the treatment of a 15–year–old girl at Tomball Hospital's emergency room on the day following her rape. The trial court granted a take-nothing summary judgment in favor of the defendant hospital, doctor and nurse. We affirm in part, and reverse in part.

This suit was brought by C.M., individually and as next friend of her minor daughter. The petition alleges, in relevant part,[2] that on June 16, 1992, at approximately 2:00 p.m., the minor was raped by a 27–year–old man.

1. This Act is also known as the "Patient Anti-Dumping Act".

2. Plaintiffs also sued the man who raped the minor, and the owner and the tenant of the home where the rape occurred. These defendants, and the causes of action against them, are not involved in this appeal.

The next day, the minor's mother and neighbor took the minor to the Tomball Hospital Emergency Room for examination. The petition alleges that defendant Mary Ruckman, the head nurse: (1) refused examination of the minor to determine the degree of the injury to her; (2) refused to prepare a "rape kit" on the minor; (3) treated the minor and her mother with "disdain, disgust and indignity"; and (4) caused information about the rape of the minor to be broadcast among other patrons of the emergency room by interviewing the minor in the public waiting room.

Against defendant nurse Ruckman, plaintiffs asserted causes of action based on: (1) intentional infliction of emotional distress for the way she conducted the interview of the minor rape victim in the public waiting room of the hospital; and (2) invasion of the minor's right to privacy under 42 U.S.C. § 1983.

Against defendant Tomball Regional Hospital, plaintiffs asserted causes of action based on: (1) violation of 42 U.S.C. § 1395 dd (EMTALA), due to the failure and refusal of the emergency room to provide an appropriate medical screening exam, or stabilizing treatment, for the minor; and (2) violation of 42 U.S.C. § 1983 by maintaining emergency room policies, customs, and practices that are "deliberately indifferent to the juvenile female sexual assault victim's right to privacy," causing public disclosure of private facts.[3]

Against defendant Albert D. Friday, Jr., M.D., the medical director of the emergency department for the Hospital, plaintiffs alleged a violation of 42 U.S.C. § 1983. Specifically, plaintiffs asserted that, as a supervisory official who promulgates and enforces policy for the emergency room, Dr. Friday demonstrated a "deliberate indifference to rape victims' rights to privacy and tacitly authorized the implementation of policies and practices that caused the invasion of the minor's privacy and the disclosure of confidential information." Further, plaintiffs alleged Dr. Friday's failure to implement policies as

recommended by the Texas Department of Health proximately caused the unreasonable disclosure of private facts.

Defendants moved for summary judgment, addressing each cause of action, and the trial court granted summary judgment.

In a sole point of error, plaintiffs assert the trial court erred by granting defendants' motion for summary judgment when there were disputed fact issues as to each asserted cause of action.

The standard for appellate review of a summary judgment for a defendant is whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more of the essential elements of the plaintiff's cause of action. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991); *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex. 1970). The movant has the burden to show that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985). Evidence favorable to the non-movant will be taken as true in deciding whether there is a disputed material fact issue that precludes summary judgment. *Id.* Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex. 1995). A summary judgment for the defendant, disposing of the entire case, is proper only if, as a matter of law, plaintiff could not succeed upon any theories pleaded. *Smith, Seckman, Reid, Inc. v. Metro Nat'l Corp.,* 836 S.W.2d 817, 819 (Tex.App.—Houston [1st Dist.] 1992, no writ); *Havens v. Tomball Community Hosp.,* 793 S.W.2d 690, 691 (Tex. App.—Houston [1st Dist.] 1990, writ denied); *Dodson v. Kung,* 717 S.W.2d 385, 390 (Tex. App.—Houston [14th Dist.] 1986, no writ). Once the defendant produces sufficient evidence to establish the right to a summary judgment, the plaintiff must set forth sufficient evidence to give rise to a fact issue to

---

3. Plaintiffs' petition alleged that the Texas Department of Health suggests that all sexual assault victims be considered medical emergencies and that medical facilities should provide private offices for interviews with sexual assault victims, citing Tex. Evidence Collection Protocol, April 1992.

avoid a summary judgment. *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936–37 (Tex.1972).

A summary judgment cannot be affirmed on any grounds not presented in the motion for summary judgment. *Hall v. Harris County Water Control & Improvement Dist. No. 50*, 683 S.W.2d 863, 867 (Tex. App.—Houston [14th Dist.] 1984, no writ). When a trial court's order does not specify the grounds relied on for its ruling, the summary judgment will be affirmed if any of the theories advanced are meritorious. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 378 (Tex.1993); *Jones v. Legal Copy, Inc.*, 846 S.W.2d 922, 924 (Tex.App.—Houston [1st Dist.] 1993, no writ).

The uncontroverted summary judgment evidence shows that on June 16, 1992, the minor plaintiff was raped. She was brought to Tomball Hospital's emergency room approximately 23 hours later, on June 17, 1992. Mary Ruckman, the head nurse on duty, conducted the minor's screening upon arrival.

Rather than take the minor to a private room, Ruckman conducted the entire screening in the emergency waiting room of the hospital. During the screening, Ruckman was informed that the minor had been raped, and that she was in severe pain. Ruckman did not take the minor's vital signs, nor did she ask for any medical history, nor was any physical examination done whatsoever. Ruckman did, however, ask questions concerning the minor's rape, and asked if the minor had bathed. Learning that the minor had bathed, Ruckman stated that there was nothing the hospital could do for the minor, and told the minor and her mother to go to their family doctor. No other instructions were given by Ruckman. The mother repeatedly asked for an examination of her daughter to determine whether her daughter was all right. Ruckman insisted that there was nothing the hospital could do for the minor. The minor and her mother left. On their way home, they stopped at their family doctor's office, which was closed. The next morning the minor and her mother went back to their family doctor's office and were notified that the doctor was in surgery and, thus, could not conduct a full examination.

However, the nurse did a preliminary examination and provided the minor with rape crisis information. She also instructed them to go to Ben Taub Hospital, which they did, and a full examination, including a rape kit, was performed.

When Nurse Ruckman interviewed the minor and her mother in the public waiting room, 10 to 15 people were in the room and "easily overheard the entire discussion," according to the mother's affidavit. One person present was Chris Moore, a person who apparently knew the minor, and Moore told others about the rape. Two days later, the minor was told by another child that the child knew about the rape from Moore's disclosures. The mother also stated the minor was "emotionally devastated" by the loss of confidentiality, and they had to leave Tomball and move their residence because the minor was "too upset to continue living in the same neighborhood and going to the same schools when everyone knew of the incident." The minor "gets ill when discussions of going to the doctor arise." The minor is now "obsessed with her privacy," will not talk to her mother about anything, is afraid of any sort of medical activity, and will not trust anyone with private information.

### Article 42 United States Code § 1395 dd

Plaintiffs asserted that Tomball Hospital violated EMTALA by improperly screening the minor. More specifically, plaintiffs alleged that because Tomball Hospital did not prepare a rape kit as required by Tomball Hospital's procedures manual for sexually assaulted patients, and did not conduct an examination of the minor to determine whether an emergency medical condition existed, Tomball Hospital failed to properly screen and treat the minor pursuant to the requirements of EMTALA.

Tomball Hospital asserted, as its first ground for summary judgment, that it conducted the screening of the minor just as it would conduct the screening of any other patient who came into the hospital emergency room in a similar situation, and that is all

that is required by EMTALA.[4]

■ EMTALA imposes two requirements: (1) the hospital must conduct an appropriate medical screening of persons visiting the hospital's emergency room; and (2) the hospital may not transfer out of the hospital those patients whose medical conditions have not been stabilized. 42 U.S.C. § 1395 dd (a), (b); *Brewer By & Through Brewer v. Miami County Hosp.*, 862 F.Supp. 305, 307 (D. Kansas 1994).

■ Section 1395 dd(a) of EMTALA requires a medicare provider hospital with an emergency room to accept any individual who comes to the emergency department and requests an examination or treatment for a medical condition. The hospital must conduct an appropriate medical screening within the capability of the hospital's emergency department to determine whether or not an emergency medical condition exists. 42 U.S.C.. 1395 dd(a). The Act does not define "appropriate medical screening." However, the congressional purpose behind the enactment of EMTALA supports the conclusion that this language requires a hospital to provide each patient[5] with a medical screening similar to one that it would provide to any other patient. *Holcomb v. Humana Medical Corp.*, 30 F.3d 116, 117 (11th Cir.1994); *Gatewood*, 933 F.2d at 1041; *Cleland v. Bronson Health Care Group, Inc.*, 917 F.2d 266, 268 (6th Cir.1990). Thus, a hospital fulfills its "appropriate medical screening" requirement when it conforms to its standard screening procedures. By the same token, any material departure from its standard screening procedure constitutes an "inappropriate screening" and, thus, a violation of the screening requirement. *Gatewood*, 933 F.2d at 1041

(hospital fulfills the "appropriate medical screening requirement" when it conforms in its treatment of a particular patient to its standard screening procedure); *see also Repp v. Anadarko Mun. Hosp.*, 43 F.3d 519, 522 (10th Cir.1994) (hospital violates EMTALA when it does not follow its own standard emergency screening procedure; however, mere de minimis variations from hospital's standard procedures do not amount to a violation of hospital policy and, thus, are not violations of EMTALA). A patient bringing a screening violation action against a hospital carries the burden of showing that the hospital treated the patient disparately from its standard screening procedures. *Williams v. Birkeness*, 34 F.3d 695, 697 (8th Cir.1994).

Tomball Hospital's procedure manual, as it deals with medical investigations in cases of suspected sexual assault, was offered as proof of Tomball Hospital's screening procedures concerning raped and sexually assaulted victims. The stated purpose of the manual is:

> to provide for the *medical detection* and *emotional support* of a person who has been the victim of a sexual assault to include provision of immediate safety, *evidence collection*, comfort, *privacy, preventative* and emergency medical treatment and referral services.

(Emphasis added.) The manual outlines detailed procedures to be conducted by the hospital staff upon a victim's arrival.[6] In her answers to interrogatories, nurse Ruckman admitted that she did not follow any of the detailed procedures.

■ Plaintiffs offered ample evidence to raise an issue of fact regarding whether the minor's screening was in violation of EMTA-

---

**4.** It is uncontested that EMTALA applies.

**5.** Congress enacted EMTALA to prevent "patient dumping" (the practice of private hospital emergency rooms refusing to treat indigent patients by transferring them to a public hospital or by merely turning them away). H.R.Rep. No. 241, 99th Cong., 1st Sess., pt. 3 at 5 (1986) *reprinted* in 1986 U.S.C.C.A.N. 726. However, to come within the protection of EMTALA, a plaintiff need not allege he was indigent or uninsured, nor need he allege that economic, race, ethnicity or any other reason motivated the hospital to treat him disparately from other patients. *Ruiz*

*v. Kepler*, 832 F.Supp. 1444, 1447 (D.N.M.1993); *see also Gatewood v. Washington Healthcare Corp.*, 933 F.2d 1037, 1040 (D.C.Cir.1991).

**6.** The detailed procedures include the following:

1. Place patient in treatment room # C and provide as much privacy as possible.
2. Offer emotional support. If at all possible, arrange for one person to be with the patient throughout the entire exam.
3. Obtain vital signs, history of allergies and other information necessary to complete E.R. chart.

LA. Viewing the evidence in the light most favorable to plaintiffs and resolving all inferences in favor of plaintiffs, the record shows that the minor was raped; that her mother took her to Tomball Hospital within 23 hours after the rape and requested an examination to determine if the minor was hurt; Ruckman was informed that the minor was "bleeding from her bottom"[7] and in severe pain as though "someone was tearing [her] apart;" upon learning that the minor had bathed after the rape, Ruckman refused the minor an examination, stating, "We do not like to deal with rape victims, especially after they have taken a bath or a shower or anything;" Ruckman implied that the minor was not raped and could have lost her virginity in a number of ways, including riding a bike or a horse; Ruckman did not follow the Hospital's standard emergency room procedures for screening and treating the victim of a suspected sexual assault.

We conclude a material fact issue was raised regarding whether the hospital materially departed from its standard emergency screening procedures in this case; therefore, Tomball Hospital was not entitled to summary judgment on its first ground.

■ Tomball Hospital's second ground for summary judgment was that, regardless of whether a screening violation occurred, plaintiffs were not damaged from any screening violation and, thus, it is still entitled to summary judgment as a matter of law. This argument is without merit.

42 U.S.C. 1395 dd (d)(2)(A) specifically states:

[a]ny individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is locat-

ed, and such equitable relief as is appropriate.[8]

The plaintiffs' petition sought damages for reasonable medical expenses for necessary medical treatment; lost wages; mental anguish; pain and suffering; and reasonable attorneys' fees. Both the mother and the minor testified regarding the pain the minor was suffering, and the humiliation the minor felt in response to Ruckman's implied belief that the minor was not raped. Additionally, the mother states in her affidavit that, because the interview was conducted in the emergency waiting room rather than in a private room, individuals overheard the interview, which led to the minor's friends and neighbors finding out about the incident. This humiliation forced the minor and her family to move from Tomball.

Additionally, Mary Krause, the peer counselor and group facilitator for sexual assault victims at the Houston Area Women's Center, where the minor has been receiving counseling, stated in her affidavit that statements made in the context of an admittance interview at a hospital, in a care provider/patient relationship, can compound the sexual assault recovery process by adding additional issues that need to be addressed in counseling. According to Krause, the statements and actions by Ruckman in the emergency room caused the minor to have additional compounded emotional issues requiring counseling.

We conclude the evidence raises a material fact issue regarding whether plaintiffs suffered recoverable damages as a result of any screening violation by Tomball Hospital.

Accordingly, we hold the trial court erred in granting summary judgment in favor of Tomball Hospital on the causes of action based on 42 U.S.C. § 1395dd.

### Article 42 United States Code § 1983

With regard to plaintiffs' claims against all three defendants under 42 U.S.C § 1983, de-

---

7. There is conflicting evidence about whether nurse Ruckman was told about the bleeding. We must view the evidence in the light most favorable to plaintiffs.

8. Additionally, 42 U.S.C. section 1395 dd (d)(1)(A) states: "[a] participating hospital that

negligently violates a requirement of this section is subject to a civil money penalty of not more than $50,000 (or not more than $25,000 in the case of a hospital with less than 100 beds) for each such violation."

fendants asserted as grounds for summary judgment that (1) plaintiffs have no constitutionally recognized privacy interest; (2) plaintiffs did not reasonably expect the information to remain private; and (3) medical malpractice does not form the basis of a section 1983 claim.

Plaintiffs asserted that defendants violated the minor's right to privacy under 42 U.S.C. 1983[9]. Plaintiffs claim a privacy right regarding the minor's medical records, her identity, and her condition as a victim of sexual assault. They assert the minor's right to privacy was violated by the fact that the minor's screening was conducted in the emergency room waiting area rather than a private room, causing plaintiffs' conversations with Ruckman to be overheard by people in the waiting area.

█ Section 1983 imposes liability for violations of rights protected by the United States Constitution, not for violations of duties of care arising out of tort law. *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 447 (5th Cir.1994). Plaintiffs assert the minor had a constitutionally protected right to privacy under the Fourth and Fourteenth Amendments to the U.S. Constitution.

█ Guarantees of personal privacy are limited to those that are "fundamental" or "implicit in the concept of ordered liberty." *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937). One type of privacy interest that is protected by the U.S. Constitution is the "right to be let alone", which protects an individual's interest in avoiding the disclosure of personal information. *Whalen v. Roe*, 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977); *City of Sherman v. Henry*, 928 S.W.2d 464, 467 (Tex. 1996). This privacy interest focuses on government action that is intrusive or invasive. *Whalen*, 429 U.S. at 599, 97 S.Ct. at 876.. Thus, an individual's medical records have been declared to be within a zone of privacy protected by the Federal Constitution. *Whalen*, 429 U.S. at 601, 97 S.Ct. at 877;

*G.M.C. v. Director of Nat'l Inst.*, 636 F.2d 163, 166 (6th Cir.1980); *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3rd Cir.1980); *Tarrant County Hosp. Dist. v. Hughes*, 734 S.W.2d 675, 679 (Tex.App.— Fort Worth 1987, orig. proceeding).

█ In the present case, the minor was not admitted into the hospital and a medical exam was not conducted. During the minor's screening, Ruckman had pen and paper in hand but did not make any notes; thus, no medical records were created. Accordingly, the minor's privacy right with regard to her medical records was not violated.

█ Plaintiffs contend that the Texas Rules of Civil Evidence contain a physician-patient privilege that protects from disclosure medical records and confidential communications between a physician and a patient. *See* Tex.R.Civ.Evid. 509(b)(2). However, this is but a rule of evidence, and has no bearing on whether the minor has a privacy interest protected by the U.S. Constitution.

█ The crux of plaintiffs' complaint is that the defendants' actions caused the "public disclosure of private facts"; that by interviewing plaintiffs in the emergency waiting room, it became public that the minor was a rape victim. Plaintiffs claim damage to their reputations as a result of the public disclosure. However, plaintiffs do not cite any case recognizing a person's constitutionally protected privacy interest in the facts of a crime committed against the person, and we have found none. *See Scheetz v. The Morning Call, Inc.*, 946 F.2d 202, 209 (3rd Cir.1991) (no valid section 1983 action for republication of information contained in a police report regarding wife's allegation of spouse abuse); *see also Paul v. Davis*, 424 U.S. 693, 699, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976) (injury to reputation is not a liberty interest protected by the Fourteenth Amendment.).

---

9. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

We conclude the summary judgment was proper in favor of all three defendants on plaintiffs' section 1983 claims.

## Intentional Infliction of Emotional Distress

Plaintiffs also pled that nurse Ruckman's conduct and statements with regard to the minor were so "extreme and atrocious" that they rose to the level of intentional infliction of emotional distress. The mother testified in her deposition that nurse Ruckman treated them like dirt and told them, "We do not like to deal with rape victims." She also testified about Ruckman's remarks implying that the minor could have lost her virginity by falling, or riding a bike or a horse, rather than by being a victim of rape. The evidence showed Ruckman interviewed plaintiffs in the public waiting room, rather than a private room. Plaintiffs argue that Ruckman's behavior, coming from a health-care provider in the context of an admittance interview with a sexually assaulted minor, rises to the level of intentional infliction of emotional distress.

Ruckman's ground for summary judgment was that her conduct did not constitute intentional infliction of emotional distress as a matter of law.

In Texas, a plaintiff has an exceptionally difficult burden to recover under this cause of action. In *Twyman v. Twyman*, 855 S.W.2d 619, 621–22 (Tex.1993), the supreme court adopted section 46(1) of the RESTATEMENT (SECOND) OF TORTS (1965), according to which recovery is to be had for outrageous conduct "only where the conduct has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* at 621. We believe that (1) the court has said what it means, and (2) Ruckman's conduct does not meet the Restatement standard as a matter of law.

Beginning with *Twyman*, the supreme court has weighed conduct under the intentional infliction of emotional distress standard. In *Twyman*, the court held that the wife's allegations that the husband "intentionally and cruelly attempted to engage her in 'deviate sexual acts'" fell within the category of conduct for which liability could attach. 855 S.W.2d at 623.

In *Massey v. Massey*, the court left standing the court of appeals' upholding of liability for intentional infliction of emotional distress, while rejecting the negligent infliction cause of action. 867 S.W.2d 766 (Tex.1993). The involved conduct represented a pattern of continued harassment that was specifically addressed to the plaintiff during her 22–year marriage to defendant. *See Massey v. Massey*, 807 S.W.2d 391, 399–400 (Tex.App.—Houston [1st Dist.] 1991, writ denied, 867 S.W.2d 766).

In *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex.1993), the supreme court examined conduct arising out of the employer-employee relationship. It held that handling a termination of employment in an insensitive manner and escorting a fired salaried employee off the premises with a security guard did not constitute intentional infliction of emotional distress as a matter of law. *Id.* at 734.

In *Mattix–Hill v. Reck*, the court held that the actions of a Department of Human Services (DHS) caseworker did not rise to the level of intentional infliction of emotional distress upon the mother of a child placed in DHS custody. 923 S.W.2d 596, 598 (Tex. 1996). The caseworker had removed a minor girl from the home of her mother and stepfather after the girl accused her stepfather of sexual molestation. *Id.* at 596. At one point, the caseworker informed the mother that the girl would not be returned to her. *Id.* at 597. When the girl ran away from the foster home, the caseworker telephoned the mother to inform her of the girl's actions and asked the mother to come to the DHS office to sign a plan of permanent placement. *Id.* The mother testified that she was extremely upset by that conversation. *Id.* During the three days she was missing, the girl was allegedly raped by more than one man while she was under the influence of alcohol, drugs, or both. *Id.* After the stepfather confessed that he had molested the girl, the wife separated from him and instituted divorce proceedings. *Id.* The girl was ultimately returned to the mother's custody. *Id.*

The mother filed suit on her own behalf and as next friend of the girl against DHS, the caseworker, and four of her colleagues for intentional infliction of emotional distress, among other claims. The court held there was "no evidence of intentional infliction of emotional distress," noting that the evidence showed activities that are a part of a caseworker's job, which is often carried out in a highly emotionally charged atmosphere. *Id.* at 598.

In the present case, plaintiffs point to the following acts as being some evidence of outrageous conduct on the part of Ruckman:

(1) Ruckman treated the plaintiffs like dirt and told them, "We do not like to deal with rape victims."

(2) Ruckman inferred that the minor could have lost her virginity by falling or riding a bike or a horse, rather than by being a victim of rape.

(3) Ruckman interviewed the plaintiffs in a public waiting room rather than in a private room.

According to the supreme court, "[r]ude behavior does not equate to outrageousness, and behavior is not outrageous simply because it may be tortious." *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994). Ruckman's conduct was an isolated contact with plaintiffs. The actions took place while she was doing her job, although doing it badly. She was rude, insensitive, and uncaring. But her conduct did not rise to the level of intentional infliction of emotional distress under prevailing standards.

Accordingly, we conclude the summary judgment for Ruckman was proper on the intentional infliction of emotional distress cause of action.

We affirm the summary judgment in favor of Dr. Friday; we affirm the summary judgment in favor of nurse Ruckman; and we affirm the summary judgment in favor of Tomball Hospital on the cause of action based on 42 U.S.C. § 1983. We reverse the summary judgment in favor of Tomball Hospital on the cause of action based on 42 U.S.C. § 1395 dd (EMTALA), and we re-mand that portion of the judgment to the trial court for further proceedings.