NO. 12-00-00374-CV



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT


 

TYLER, TEXAS




HAYNES & BOONE, L.L.P.,

AND BETTYE S. SPRINGER,
§
 APPEAL FROM THE THIRD

APPELLANTS


V.
§
 JUDICIAL DISTRICT COURT OF


LISA CHASON,

APPELLEE
§
 ANDERSON COUNTY, TEXAS






 

 Haynes & Boone, L.L.P. and Bettye Springer ("Appellants") appeal from a judgment entered
in favor of Lisa Chason in her suit for intentional infliction of emotional distress. Appellants raise
four issues on appeal. Because we determine that the evidence does not support a finding that
Springer's actions rose to the level of extreme and outrageous conduct required for the tort of
intentional infliction of emotional distress, we reverse the trial court's judgment and render judgment
in favor of Appellants.


Background

 Bettye Springer, a partner in the law firm of Haynes & Boone, represented the City of
Palestine in an employment dispute between the City and Chason's husband, Brian. One of the
issues in that dispute involved Brian's unauthorized personal use of a city owned digital camera to
take provocative photographs of Chason. Springer enlarged one of the photos of Chason to poster
size for use at an administrative hearing held at the Palestine Public Library. The photo shows 
Chason's unclad torso, but not her face. Chason alleged that, at the close of the first day of the
hearing, Springer publicly displayed the poster and, on the second day of the hearing, she spoke
inappropriately to a reporter about the photographs. Based on these two incidents, Chason sued
Haynes & Boone and Springer for intentional infliction of emotional distress. The jury found that
Springer intentionally inflicted emotional distress on Chason, awarded her nothing for past damages,
but $50,000 for future damages and $25,000 in exemplary damages.


The Issue

 Appellants assert in their first issue that the trial court should not have allowed this case to
go to the jury. They argue that, as a matter of law, the complained-of incidents do not rise to the
level of extreme and outrageous conduct required to submit the issue of intentional infliction of
emotional distress to the jury. Therefore, their argument continues, the trial court should have
entered judgment in their favor at the close of plaintiff's case. Although Appellants did not label
their motion as one for directed verdict, in essence, it is such a motion. Accordingly, we address this
issue as though it were an appeal from the denial of a motion for directed verdict.


Standard of Review 

 An appeal from the denial of a motion for directed verdict is in essence a challenge to the
legal sufficiency of the evidence. Lochinvar Corp. v. Meyers, 930 S.W.2d 182, 187 (Tex. App.- 
Dallas 1996, no writ). We sustain challenges to the legal sufficiency of the evidence when there is
a complete lack of evidence of a vital fact or the evidence offered to prove a vital fact is no more
than a mere scintilla. Id. at 188. The reviewing court considers only the evidence and inferences
tending to support the trial court's ruling. Wal-Mart Stores, Inc. v. Gonzalez, 968 S.W.2d 934, 936
(Tex. 1998). If there is any evidence of probative value raising issues of fact on the material
questions presented, a directed verdict is improper. Quantel Bus. Sys., Inc. v. Custom Controls,
761 S.W.2d 302, 304 (Tex. 1988).


Extreme and Outrageous

Applicable Law

 The elements of the tort of intentional infliction of emotional distress are: 1) the defendant
acted intentionally or recklessly, 2) the conduct was extreme and outrageous, 3) the actions of the
defendant caused the plaintiff emotional distress, and 4) the emotional distress suffered by the
plaintiff was severe. Twyman v. Twyman, 855 S.W.2d 619, 621 (Tex. 1993). Courts must
determine as a threshold matter whether the defendant's conduct may reasonably be regarded as so
extreme and outrageous as to permit recovery. Brewerton v. Dalrymple, 997 S.W.2d 212, 216 (Tex.
1999). To be extreme and outrageous, conduct must be so outrageous in character and so extreme
in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and
utterly intolerable in a civilized community. Id. The test for determining what conduct is extreme
and outrageous is essentially a subjective one. Twyman, 855 S.W.2d at 629 (Hecht, J., concurring
and dissenting). The fact that an act is intentional or malicious does not make it extreme and
outrageous for purposes of this tort. Id. at 215. Insensitive or rude behavior does not amount to
outrageous behavior. Gaspard v. Beadle, 36 S.W.3d 229, 238 (Tex. App.- Houston [1st Dist.] 2001,
pet. denied). Mere insults, indignities, or other trivialities do not rise to the necessary level of
extreme and outrageous conduct. Restatement (Second) of Torts § 46 cmt. d (1965). Plaintiffs
are expected to be hardened to occasional inconsiderate and unkind acts. Id. In determining whether
certain conduct is extreme and outrageous, courts consider the context and the relationship between
the parties. GTE Southwest, Inc. v. Bruce, 998 S.W.2d 605, 612 (Tex. 1999). Considering only
the evidence and inferences tending to support the trial court's finding that Springer's conduct was
extreme and outrageous as those terms are used in the context of the tort of intentional infliction of
emotional distress, we consider whether Appellants' motion should have been granted. 

The Complained-of Conduct

 In her petition, Chason complains of two specific, isolated incidents. The first incident
happened on the first day of an administrative hearing held in a matter between her husband and the
City of Palestine. A portion of the discussion at that hearing centered on photographs of Chason that
had been taken by her husband using a city owned digital camera. In some of the photos, Chason
was wearing lingerie. In one of the photos, she was topless, although her face did not show. 
Springer had the photo in which Chason appeared topless enlarged to poster size. 

 The hearing was held at the Palestine Public Library. Chason testified that at the end of the
day, as the parties were leaving the hearing, Springer looked at her, picked up the poster, put it under
her arm, looked at her again, turned the poster so the image faced out toward Chason, smiled, and
left the room. Springer then walked into the foyer where she stood for five to ten minutes visiting
with her clients as library patrons entered and exited the library. During this time, Springer looked
at Chason and smiled. Springer then walked to the parking lot where she stood, talking to her
clients, for an additional fifteen to twenty minutes. Several times, Springer turned to look at Chason. 
Springer's legal assistant then placed the poster in the trunk of Springer's car. Chason testified that
the poster was not covered while Springer was carrying it. Chason characterized Springer's actions
as a personal attack, made knowingly, with the specific intent to hurt her. Brian Chason's attorney,
William Curley, testified that he saw Springer carrying the uncovered photo facing out so that people
could see it after the hearing.

 The second incident involved a conversation between Springer and Michael Roark, a local
newspaper reporter. During the second day of the hearing, Chason was sitting outside the hearing
room with her best friend, Jamie Long. According to Long's testimony, Springer came out of the
hearing room, looked at Chason, then saw Roark, laughed, and told him she had some photographs
she would like to sell him. Long characterized Springer's conduct as humiliating, degrading, and
intimidating. Roark testified that he got the impression that Springer was waiting for him to walk
up so she could make the comment in order to upset Chason.

Context

 The context in which these two incidents arose is important to our analysis. Chason is a long
time resident of Palestine, Texas where she works as the manager of a local restaurant. She is active
in her church, and has enjoyed a good reputation in the community. Understandably, even before
the administrative hearing, Chason was concerned that the photographs her husband had taken might
become public. 

 She described how distraught she had been when she first learned that some police officers
had discovered the photographs on the City's laptop computer, especially since she had specifically
instructed her husband to delete the photographs from the City's computer before returning it. She
was so concerned that they would be viewed by still more officers that she personally met with the
chief of police to ask him to make sure the photos were not passed around the department or
discussed among the officers. She also explained that she had been very upset to find out that two
babysitters, ages ten and twelve, had perused the computer files on Chason's personal computer and
somehow found the photographs. Chason then had to discuss the photos with the babysitters'
mothers.

 The photos were further publicized during the course of the employment dispute between
Chason's husband and the City of Palestine. The City had terminated her husband and he appealed
that decision which resulted in a three-day hearing held at the public library. While Chason was not
a party to that proceeding and therefore not allowed to remain inside the hearing room, she was
present, seated just outside the hearing room. The events of the hearing, including a reference to the
photos which were placed into evidence, were reported in the local newspaper, and had even been
discussed on what Chason described as "a big gossip web site." Matters that Chason referred to as
family secrets were brought out during the hearing, including details of an extra-marital affair her
husband had engaged in. Thus, the record shows that the photos, or information about them, were
disseminated in many different ways, including, but not limited to, the complained-of conduct of
Springer. 

 Understandably, the entire unpleasant ordeal concerning her husband's termination, the fear
of the potential dissemination of their personal photographs, and their public marital problems
would all be very upsetting to Chason. However, we cannot confuse the elements of the severity of
the plaintiff's distress with the severity of the defendant's conduct. In considering whether
Springer's conduct was extreme and outrageous, Chason's level of distress does not factor in and
we make no comment regarding that element of her cause of action. Moreover, the fact that an act
has the effect of causing one to experience emotional distress, does not in and of itself, compel a
court finding that the act itself was extreme and outrageous. 

Discussion 

 The threshold for what constitutes extreme and outrageous conduct sufficient to give rise to
the tort of intentional infliction of emotional distress is a difficult one to meet. To guide us in our
determination of whether Springer's conduct is actionable, we have reviewed numerous Texas cases
in which the plaintiff alleged intentional infliction of emotional distress and the courts were required
to assess whether the defendant's conduct met the threshold of extreme and outrageous conduct.

 In the employment context, behavior has, in some instances, been found to be extreme and
outrageous where the supervisor's unwanted behavior continued over a period of time. In Fields v.
Teamsters Local Union No. 988, 23 S.W.3d 517 (Tex. App.- Houston [1st Dist.] 2000, pet.
denied), the employer threatened to fire the employee if she did not succumb to his sexual advances. 
The harassment took place over a three month period. The appellate court reversed a summary
judgment in favor of the employer, determining it could not be held that his behavior did not as a
matter of law rise to the requisite level of extreme and outrageous. Id. at 531-33. In GTE Southwest
v. Bruce, the Supreme Court held that the supervisor's ongoing acts of harassment, intimidation, and
humiliation and his daily vulgar and obscene behavior rose to the requisite level. Bruce, 998 S.W.2d
at 612-13. In Dean v. Ford Motor Credit Company, 885 F.2d 300 (5th Cir. 1989), the Fifth Circuit
Court of Appeals held that an employer who, in addition to other improper acts, caused an innocent
employee to be subject to an accusation of crime and put in fear that she might be accused of a crime
is extreme and outrageous conduct. Id. at 307. 

 Conduct occurring over an extended period of time in contexts other than employment has
also been identified as extreme and outrageous conduct. The Dallas Court of Appeals found a
husband's mental and physical abuse of his wife throughout their marriage to constitute extreme and
outrageous conduct. Toles v. Toles, 45 S.W.2d 252, 262 (Tex. App.- Dallas 2001, pet. denied). In
Gonzales v. Willis, 995 S.W.2d 729 (Tex. App.- San Antonio 1999, no pet.), the defendant led the
plaintiff to believe he would help her get a job at his place of employment. The two spoke over the
phone and in person several times. The defendant repeatedly initiated sexually explicit conversations
and made sexual advances in spite of the plaintiff's clear protests. He suggested that he would help
her get the job she wanted in return for sexual favors. He also encouraged the plaintiff's coworkers
to convey indecent propositions to her. The San Antonio Court of Appeals agreed with the jury's
determination that this conduct was extreme and outrageous. Id. at 736. 

 Courts have also identified certain isolated incidents as meeting the threshold for extreme
and outrageous conduct. The Supreme Court reviewed a summary judgment granted in favor of the
defendant in Morgan v. Anthony, 27 S.W.3d 928 (Tex. 2000). There, the plaintiff's car was
experiencing mechanical difficulties on a highway between two towns. Plaintiff was driving on the
shoulder at five miles per hour when her car died and the defendant stopped to offer his assistance. 
In the process he also made suggestive comments, making it clear that he was interested in more than
helping her with car repairs, and he continued to pursue her even after she declined his assistance. 
After describing in detail the defendant's actions, the Supreme Court said that it had "no difficulty
in concluding that there is evidence of conduct" that is extreme and outrageous. Id. at 931. The
Corpus Christi Court of Appeals reversed a directed verdict entered in the defendant's favor in
Escalante v. Koerner, 28 S.W.3d 641 (Tex. App.- Corpus Christi 2000, pet. denied). Escalante
gave birth by caesarian section to one healthy twin. The other twin had died in utero and Koerner,
her doctor, told Escalante the fetus had been "reabsorbed" and therefore there was nothing left to
bury. Escalante later learned that was not true. The remains had been disposed of as surgical waste
in spite of Koerner's knowledge that Escalante and her husband wanted to bury whatever remained
of the fetus. The Corpus Christi court determined that the trial court erred in finding the doctor's
conduct was not extreme and outrageous as a matter of law. Id. at 647-48. The Fort Worth Court
of Appeals affirmed a jury's determination that a car dealership intentionally inflicted emotional
distress on a customer through the use of its sales techniques. George Grubbs Enters. v. Bien, 881
S.W.2d 843, 853-54 (Tex. App.- Fort Worth 1994), rev'd on other grounds, 900 S.W.2d 337 (Tex.
1995). The dealership induced the customer to write a check through misrepresentation, then
detained him for four hours, exerting constant pressure on him to go through with the sale. Id.

 Conversely, we have found an even greater number of cases in which the courts found the
defendant's conduct did not rise to the requisite level to allow recovery for intentional infliction of
emotional distress. In Wornick Co. v. Casas, 856 S.W.2d 732 (Tex. 1993), the Supreme Court held
that an employer's conduct in firing an employee for allegedly possessing incriminating information
and in escorting her off the premises with a security guard was not extreme and outrageous conduct. 
Id. at 735. An attorney's act of ending a relationship with a client and then sending her a bill for past
legal services is not extreme and outrageous conduct. Gaspard, 36 S.W.3d at 237-38. Questioning
an employee about an alleged theft until she cries is not extreme and outrageous conduct. Randall's
Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995). A caseworker's discussion with
the distraught mother of a sexually abused child regarding the child's sexual activity and the need
to place the child in foster care on a permanent basis was deemed not to be extreme and outrageous
conduct. Mattix-Hill v. Reck, 923 S.W.2d 596, 598 (Tex. 1996). A nurse who interviewed a rape
victim, who was a minor, in the public waiting area of the hospital's emergency room in a rude and
insensitive manner did not behave in an extreme and outrageous manner. C.M. v. Tomball Regional
Hosp., 961 S.W.2d 236, 245 (Tex. App.- Houston [1st Dist.] 1997, no writ).

 There are several cases reviewing an employer's behavior towards an employee over time
in which each court found the behavior did not rise to the requisite level of extreme and outrageous
conduct. The Dallas Court of Appeals held that allegations that a supervisor went out of his way to
stare at an employee with a hateful look in his eyes or in an intimidating way is not extreme and
outrageous conduct. Williams v. Northrup Grumman Vought, No. 05-99-01314-CV, 2001 WL
767561, at *8-9 (Tex. App.- Dallas July 10, 2001, no pet.). This Court has held that an employer's
rudeness, anger, and criticism directed at an employee is not extreme and outrageous conduct. Wal-Mart Stores, Inc. v. Bertrand, 37 S.W.3d 1, 13-15 (Tex. App.- Tyler 2000, pet. denied). The
Corpus Christi Court of Appeals has held that allegations that a supervisor asked an employee if she
did her best work in the dark, discussed a sexually explicit article, and looked at her in a way that
made her feel as if he was undressing her were not outrageous as a matter of law. Garcia v.
Andrews, 867 S.W.2d 409, 410 (Tex. App.- Corpus Christi 1993, no writ). Even though it
considered a physician's behavior morally unjustifiable, the Beaumont Court of Appeal nonetheless
found his conduct, an apparent attempt to have a hospital administrator fired for his own personal
reasons, did not rise to the requisite level. Lassiter v. Wilkenfeld, 930 S.W.2d 803, 807-08 (Tex.
App.- Beaumont 1996, writ denied). Finally, the Fifth Circuit has held that although the defendant's
actions constituted racial harassment, a condemnable and possibly illegal action, it did not rise to the
level of extreme and outrageous conduct under Texas law. Walker v. Thompson, 214 F.3d 615, 628
(5th Cir. 2000).

 If we were to consider these cases as demonstrating a spectrum with cases involving conduct
meeting the threshold for extreme and outrageous conduct at one end, and behavior falling short of
the threshold at the other end, we would have to place the instant case at the latter end of the
spectrum. The case before us does not contain the sort of flagrant or heinous facts, as described
above, that led the various courts to determine the defendants there involved had indeed engaged in
extreme and outrageous conduct. Springer made no indecent propositions to Chason. See Morgan,
27 S.W.3d at 931; Gonzales, 995 S.W.2d at 736. Springer did not engage in vulgar or obscene
behavior. See Bruce, 998 S.W.2d at 612-13. Springer did not attempt to deceive Chason in order
to further a personal interest. See Gonzales, 995 S.W.2d at 736. Other than perhaps some temporary
mental anguish, Springer's acts carried no logically foreseeable negative consequences. See Dean,
885 F.2d at 307. Springer did not threaten, coerce, or physically abuse Chason. See Toles, 45
S.W.3d at 262; Bien, 881 S.W.2d at 853-54. Finally, Springer's actions did not involve any fraud. 
See Escalante, 28 S.W.3d at 647-48; Bien, 881 S.W.2d at 853.

 Chason has complained of two isolated incidents, not a prolonged series of acts. They
occurred in the adversarial context of litigation in which Springer represented a party that had fired
Chason's husband from his job for, among other infractions, allegedly using city equipment for
personal use, including photographing Chason with her consent. The incidents involved a trial
exhibit which, due to the nature of the photo from which it was made, was grainy and unclear. It
showed a headless torso not easily identifiable as Chason. Further, the acts were essentially passive. 
Springer never spoke to Chason or physically touched her. See Williams, 2001 WL 767561, at *8-9. 
Even though the complained-of acts may have been deliberate or even malicious and calculated to
humiliate Chason, we do not believe the acts rise to the level of extremeness and outrageousness
required by the Texas Supreme Court. See Brewerton, 997 S.W.2d at 215. Although arguably
unjustifiable, the acts do not rise to the requisite level. See Lassiter, 930 S.W.2d at 808. 
Essentially, Springer was doing her job, albeit perhaps poorly. See Reck, 923 S.W.2d at 598;
Johnson, 891 S.W.2d at 644; C.M., 961 S.W.2d at 245. While such alleged acts could be
characterized as rude and unprofessional, such insensitive indignities do not, as a matter of law, meet
the threshold for outrageous and extreme conduct as required to permit recovery for intentional
infliction of emotional distress as defined by the Texas Supreme Court. See id; Gaspard, 36 S.W.3d
at 238; Restatement (Second) of Torts § 46 cmt. d (1965).


Conclusion

 We conclude, therefore, that the trial court should have granted Appellants' motion for
directed verdict because Springer's conduct did not rise to the level of extreme and outrageous
conduct necessary to satisfy this required element of the tort of intentional infliction of emotional
distress. We sustain Appellants' first issue and find it unnecessary to consider their remaining
issues. We reverse the trial court's judgment and render judgment that Chason take nothing on her






 claim for intentional infliction of emotional distress. See Tex. R. App. P. 43.3.



 LEONARD DAVIS 

 Chief Justice



Opinion delivered November 28, 2001.

Panel consisted of Davis, C.J., Worthen, J., and Griffith, J.





























(PUBLISH)