NO. 12-02-00341-CV



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


LEO JOHNSON, INDIVIDUALLY AND
§
 APPEAL FROM THE 145TH

AS REPRESENTATIVE OF THE ESTATE

OF BETTY JOHNSON, DECEASED,

DORETHA JOHNSON, ROBERT JOHNSON,

LEON JOHNSON, ANDREA JOHNSON,

KENNETH JOHNSON, CHRIS JOHNSON

AND STEVE JOHNSON, APPELLANTS


V.
§
 JUDICIAL DISTRICT COURT OF




NACOGDOCHES COUNTY HOSPITAL

d/b/a NACOGDOCHES MEMORIAL

HOSPITAL,

APPELLEE
§
 NACOGDOCHES COUNTY, TEXAS

 

MEMORANDUM OPINION


 This is an appeal of a summary judgment granted in favor of Nacogdoches County Hospital
District d/b/a Nacogdoches Memorial Hospital ("the Hospital") and against Leo Johnson, Individually
and as representative of the Estate of Betty Johnson, Deceased, Doretha Johnson, Robert Johnson,
Leon Johnson, Andrea Johnson, Kenneth Johnson, Chris Johnson, and Steve Johnson ("the
Johnsons"). The Johnsons brought a claim against the Hospital under 42 U.S.C. § 1395dd, the
Emergency Medical Treatment and Active Labor Act ("EMTALA"), alleging that when Betty Johnson
arrived at its emergency room, the Hospital had failed to provide her with an appropriate medical
screening examination within its capabilities. The Hospital filed both traditional and no-evidence
motions for summary judgment which the trial court granted. We affirm.


Background


 Betty Johnson came to the Hospital Emergency Department at 10:38 a.m., January 12, 1998,
complaining of a sudden onset of nausea, diarrhea, and vomiting, chills, and eye and facial pressure. 
Robert Gene Y'Barbo, R.N., the Hospital's Director of Emergency Services, met her in the hospital
hallway leading to the Emergency Department. He seated Mrs. Johnson in a wheelchair, asked about
her complaints, and made a rapid assessment of her condition. He wheeled her to the Emergency
Department and told her that the nurse assigned to triage or emergency assessment would see her
shortly. Karen Castillo, the triage nurse, started making her initial assessment at 11:00 a.m. and
completed it fifteen minutes later. This assessment required taking Mrs. Johnson's medical history,
chief complaints, and vital signs. Based on her findings, Castillo assigned Mrs. Johnson a class 3
triage classification. A triage class 3 patient is a person with a non-urgent condition, who needs further
evaluation and treatment, but with time not a critical factor. She noted that Mrs. Johnson was
moaning. Castillo observed Mrs. Johnson in the waiting room at 11:25 a.m. At 11:40 a.m., Mrs.
Johnson left the emergency department waiting room, and Castillo was called. Castillo went to the
parking lot to see if she could assist. Mrs. Johnson's family members told Castillo that they intended
to take her to another place for treatment. Castillo informed Mrs. Johnson that the hospital would see
her, but that she had the choice to go wherever she wanted. Based upon their desire to take Mrs.
Johnson elsewhere for treatment, Castillo and the hospital security officer assisted Mrs. Johnson into
the family car, and the Johnsons left the hospital parking lot.

 According to the Johnsons' petition, Mrs. Johnson was then taken to Nacogdoches Medical
Center, then to Timpson Health Clinic, and from there, by ambulance to Memorial Hospital in Center. 
From Center she was taken by careflight to East Texas Medical Center where she died of meningitis.

 The Johnsons sued the Hospital alleging, inter alia, that the Hospital violated 42 U.S.C.
§ 1395dd(a) by failing to provide Mrs. Johnson with an appropriate medical screening examination
within the capabilities of the Hospital when she came to its emergency room. The Hospital moved for
summary judgment on both no-evidence and traditional grounds. See Tex. R. Civ. P. 166(a), (i). The
trial court granted summary judgment.


Standard of Review


 A trial court should grant a defendant's motion for summary judgment if the defendant
disproves at least one essential element of the plaintiff's cause of action, or if the defendant establishes
all the elements of an affirmative defense as a matter of law. D. Houston, Inc. v. Love, 92 S.W.3d
450, 454 (Tex. 2002). A review of a traditional summary judgment is conducted in accord with the
following standards:



 The movant has the burden of showing that there is no genuine issue of material fact and that
it is entitled to judgment as a matter of law.
 In determining if there is a disputed material fact issue, evidence favorable to the non-movant
will be taken as true.
 Every reasonable inference must be indulged in favor of the non-movant and any doubts
resolved in its favor.




See Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 549 (Tex. 1985).

 A no-evidence motion for summary judgment is utilized to challenge the absence of evidence
"of one or more essential elements of a claim or defense on which an adverse party would have the
burden of proof at trial." Tex. R. Civ. P. 166a(i). The motion must specifically set forth the elements
of the adverse party's claim or defense for which there is no evidence. Id. The burden then shifts to
the non-movant who must produce more than a scintilla of evidence to raise a genuine issue of
material fact. Haas v. George, 71 S.W.3d 904, 911 (Tex. App.-Texarkana 2002, no pet.). When a
motion for summary judgment is based on several grounds and the order granting the motion is silent
as to the reason the motion was granted, the summary judgment must be affirmed if any of the theories
are meritorious. Star Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (1995).


Applicable Law


 Subsection (a) of the Emergency Medical Treatment and Active Labor Act sets forth the
requirements relevant to the Johnson's claim.


 In the case of a hospital that has a hospital emergency department, if any individual (whether or not
eligible for benefits under this subchapter) comes to the emergency department and a request is made
on the individual's behalf for examination or treatment for a medical condition, the hospital must
provide for an appropriate medical screening examination within the capability of the hospital's
emergency department, including ancillary services routinely available to the emergency department,
to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1)
of this section) exists.



42 U.S.C. § 1395dd(a) (emphasis added). The statute further provides for recovery of personal injury
damages by any individual who suffers harm as a direct result of a participating hospital's violation
of a requirement of the statute. 42 U.S.C. § 1395dd(d)(2)(A).

 The EMTALA requirement that the screening examination be "appropriate" requires that
hospitals determine what their screening procedures will be, and then apply them uniformly to all
individuals who come into the emergency room. Casey v. Amarillo Hosp. Dist., 947 S.W.2d 301, 304
(Tex. App.-Amarillo 1997, writ denied). EMTALA was passed by Congress to meet a growing
concern that some hospitals were refusing to treat patients in emergency situations because they could
not pay or were transferring the patients to other hospitals before their condition was stabilized. Miller
v. Medical Ctr. of Southwest La., 22 F.3d 626, 628 (5th Cir. 1994). The act was not intended to
guarantee a proper diagnosis, and the "appropriateness" of a screening examination is not to be
measured against a negligence standard. See Casey, 947 S.W.3d at 304. In order to establish that a
hospital's screening procedures were inappropriate, the claimant must show that he did not receive the
same screening examination as that regularly accorded other emergency room patients in similar
medical circumstances. Id. A hospital fulfills the "appropriate medical screening requirement" when
it treats the patient in conformity with its standard screening procedure. C.M. v. Tomball Reg'l Hosp.,
961 S.W.2d 236, 241 (Tex. App.-Houston [1st Dist.] 1997, no writ). A material departure from the
hospital's standard emergency screening procedure is a violation of EMTALA. Id. But mere de
minimus variations from standard procedures do not amount to a violation of the act. Id.


Evidence


 The Hospital's motion for traditional summary judgment was supported by the affidavits of
Robert Y'Barbo, R.N., and Karen Castillo, R.N., each accompanied by copies of Betty Johnson's
emergency room record and two documents describing the Hospital's patient triage procedure and
assessment guidelines. Y'Barbo's affidavit states he is director of emergency services and that he met
Betty Johnson when she arrived at the hospital at 11:38 a.m., put her in a wheelchair, made a rapid
assessment of her condition, told her that the triage nurse would be with her shortly, and left her at the
admissions desk. At 11:40 a.m., he went to the waiting room in order to bring Mrs. Johnson to the
treating area and found that she had left. He stated that, as Emergency Services Director, he was
familiar with the applicable standards and procedures, and that, in his opinion, she received the same
initial screening examination as any other patient who presented the same complaints and symptoms.

 Karen Castillo stated in her affidavit that she was the triage nurse who made the triage
assessment of Betty Johnson's condition. The patient record shows that she began her assessment at
11:00 a.m., and she states in her affidavit that the procedure normally took fifteen minutes. Regarding
Betty Johnson's departure from the waiting room, she stated, as follows:


 I was called when Ms. Johnson left the Emergency Department. I went to the parking area to see if I
could assist Ms. Johnson. Her family members told me they intended to take Ms. Johnson to another
place for treatment. I informed Ms. Johnson that Nacogdoches Memorial Hospital would see her but
that she had the choice to go wherever she wanted. Either Ms. Johnson or her family members stated
they wanted to go someplace else. Based upon their stated desire, the Hospital security officer and I
assisted the patient into the family car. Ms. Johnson voluntarily left the Hospital parking area with her
family.



 The Hospital's utilization policy concerning patient triage provides that "[p]atient will be
spoken with within ten minutes of arrival." The assessment guidelines specify that "[w]ithin ten
minutes of arrival to ED [Emergency Department] at least a verbal contact with the triage nurse will
be performed to determine priority of treatment."


Analysis


 In their first issue presented, the Johnsons contend that the trial court erred in granting the
Hospital's traditional motion for summary judgment because the Hospital's own summary judgment
evidence showed that the Hospital did not provide triage nursing assessment to Betty Johnson in
accordance with its own policies. The Johnsons argue that a hospital's failure to follow its own
policies in screening an emergency room patient establishes a violation of EMTALA's screening
requirement.

 It is undisputed that Betty Johnson arrived at the Hospital's Emergency Department at 10:38
a.m., and she was not seen by the triage nurse until twenty-two minutes later at 11:00 a.m. The
Johnsons point out that the Hospital's summary judgment evidence shows that, according to the
Hospital's own guidelines, the triage nurse was twelve minutes late in starting her assessment of Mrs.
Johnson's condition. A violation of EMTALA's screening requirement may be established by
evidence of a hospital's material departure from its standard screening procedure. C.M., 961 S.W.2d
at 241. Therefore, the Johnsons argue, the evidence raised a genuine issue of material fact as to
whether the Hospital failed to provide Mrs. Johnson with an appropriate medical screening
examination. In determining whether the twelve-minute delay was a material deviation from the
Hospital's standard procedure, sufficient to raise an issue of material fact, it is important to note that
Mrs. Johnson was met on arrival at the emergency department by Robert Y'Barbo, a registered nurse
and head of the emergency department, who put her in a wheelchair, asked about her complaints, and
made a rapid assessment of her condition before leaving her at the admissions desk. 

 In the two cases relied upon by the Johnsons, the hospitals' conduct demonstrated a callous
disregard for their established policies. In C.M., a summary judgment case, the hospital's procedure
manual outlined detailed procedures to be conducted by the hospital staff upon arrival of a rape victim
at the emergency department. The head nurse followed almost none of the procedures in refusing a
rape victim an examination. Instead, the nurse told the fifteen-year-old victim, "We do not like to deal
with rape victims, especially after they have taken a bath or shower or anything." C.M., 961 S.W.2d
at 242. In Correa v. Hospital of San Francisco, Correa's mother, Mrs. Rodriguez, went to the
emergency room where her son told the receptionist that "she feels sick and has chest pains." She was
given a number (forty-seven) and told to bide her time. After waiting one hour and fifteen minutes,
her son heard an attendant calling patient number twenty-four for treatment. The family waited
another hour before leaving. During the two-hour wait, no one attempted to assess her condition. 69
F.3d 1184, 1189-90 (1st Cir. 1995). The outrageous conduct in these cases is clearly distinguishable
from the de minimus departure from standard procedure in the instant case. The twelve-minute delay
in commencing triage creates no fact issue as to the appropriateness of Mrs. Johnson's medical
screening examination, particularly in light of her initial interview with Robert Y'Barbo. The
Johnsons' first issue challenging the granting of the Hospital's traditional motion for summary
judgment is overruled.

 The Hospital's guidelines required that the Hospital also provide Mrs. Johnson an appropriate
medical screening examination by a physician. The Hospital's motion contended that such an
examination would have been provided had she not left voluntarily.

 The Johnsons maintain, in their second issue, that the Hospital did not conclusively establish
that she left voluntarily. They argue that the delay in the nursing assessment of Mrs. Johnson on her
arrival at the hospital creates a fact question about the voluntariness of her departure. They contend
that the affidavits of Robert Y'Barbo and Karen Castillo that Mrs. Johnson "eloped" or left voluntarily
"were mere conclusions of interested witnesses . . . contradicted by the summary judgment evidence." 
We disagree. After the Johnsons left the waiting room, Nurse Castillo followed the Johnsons to the
parking lot and told them the Hospital would see Mrs. Johnson. In her affidavit, she states that either
Mrs. Johnson or her family said they wanted to go somewhere else for treatment. On being assured
that they would not stay, she and the security officer helped Mrs. Johnson into the car and saw her and
her family leave the hospital. There was no evidence to the contrary.

 Summary judgment may be granted on the basis of uncontroverted testimonial evidence of an
interested witness if that evidence is clear, positive and direct, otherwise credible and free from
contradictions and inconsistencies, and could have been readily controverted. Tex. R. Civ. P. 166a(c). 
Mrs. Johnson left the hospital with family members who could easily have controverted the nurses'
affidavits if they believed that they testified incorrectly.

 The Johnsons also argue that the Hospital failed to comply with its policy that the nursing staff
call a missing patient's name three times in the waiting room before presuming that the patient left. 
In this case, the Johnsons were seen leaving, and Nurse Castillo followed them to the parking lot. 
After their departure, she documented Mrs. Johnson's elopement on her chart. Under these
circumstances, calling the absent Mrs. Johnson's name three times in the waiting room would have
served no purpose. The summary judgment evidence conclusively establishes that Mrs. Johnson left
the Hospital voluntarily preventing the completion of her examination by a physician. The Johnsons'
second issue challenging the trial court's granting the Hospital's traditional motion for summary
judgment is overruled. The trial court correctly concluded that there was no genuine issue of material
fact, and that the hospital was entitled to judgment as a matter of law. We need not address those
issues concerning the no-evidence motion. Tex. R. App. P. 47.1.

 The summary judgment is affirmed.

 BILL BASS 

 Justice



Opinion delivered August 20, 2003.

Panel consisted of Griffith, J., DeVasto, J., and Bass, Retired Justice, Twelfth Court of Appeals, Tyler, sitting by assignment.



(PUBLISH)