HAYNES & BOONE, L.L.P.,
and Bettye S. Springer,
Appellants,

v.

Lisa CHASON, Appellee.

No. 12–00–00374–CV.

Court of Appeals of Texas,
Tyler.

Nov. 28, 2001.

Rehearing Overruled Jan. 8, 2002.

Deborah J. Race, Ireland, Carroll & Kelley, P.C., Tyler, for appellants.

Roger W. Anderson, Tyler, for appellee.

Panel consisted of DAVIS, C.J., WORTHEN, J., and GRIFFITH, J.

LEONARD DAVIS, Chief Justice.

Haynes & Boone, L.L.P. and Bettye Springer ("Appellants") appeal from a judgment entered in favor of Lisa Chason in her suit for intentional infliction of emotional distress. Appellants raise four issues on appeal. Because we determine that the evidence does not support a finding that Springer's actions rose to the level of extreme and outrageous conduct required for the tort of intentional infliction of emotional distress, we reverse the trial court's judgment and render judgment in favor of Appellants.

## BACKGROUND

Bettye Springer, a partner in the law firm of Haynes & Boone, represented the City of Palestine in an employment dispute between the City and Chason's husband, Brian. One of the issues in that dispute involved Brian's unauthorized personal use of a city owned digital camera to take provocative photographs of Chason. Springer enlarged one of the photos of Chason to poster size for use at an administrative hearing held at the Palestine Public Library. The photo shows Chason's unclad torso, but not her face. Chason

alleged that, at the close of the first day of the hearing, Springer publicly displayed the poster and, on the second day of the hearing, she spoke inappropriately to a reporter about the photographs. Based on these two incidents, Chason sued Haynes & Boone and Springer for intentional infliction of emotional distress. The jury found that Springer intentionally inflicted emotional distress on Chason, awarded her nothing for past damages, but $50,000 for future damages and $25,000 in exemplary damages.

### THE ISSUE

Appellants assert in their first issue that the trial court should not have allowed this case to go to the jury. They argue that, as a matter of law, the complained-of incidents do not rise to the level of extreme and outrageous conduct required to submit the issue of intentional infliction of emotional distress to the jury. Therefore, their argument continues, the trial court should have entered judgment in their favor at the close of plaintiff's case. Although Appellants did not label their motion as one for directed verdict, in essence, it is such a motion. Accordingly, we address this issue as though it were an appeal from the denial of a motion for directed verdict.

### STANDARD OF REVIEW

■■■ An appeal from the denial of a motion for directed verdict is in essence a challenge to the legal sufficiency of the evidence. *Lochinvar Corp. v. Meyers*, 930 S.W.2d 182, 187 (Tex.App.—Dallas 1996, no writ). We sustain challenges to the legal sufficiency of the evidence when there is a complete lack of evidence of a vital fact or the evidence offered to prove a vital fact is no more than a mere scintilla. *Id.* at 188. The reviewing court considers only the evidence and inferences tending to support the trial court's ruling. *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex.1998). If there is any evidence of probative value raising issues of fact on the material questions presented, a directed verdict is improper. *Qantel Bus. Sys., Inc. v. Custom Controls*, 761 S.W.2d 302, 304 (Tex.1988).

### EXTREME AND OUTRAGEOUS

### Applicable Law

■■■ The elements of the tort of intentional infliction of emotional distress are: 1) the defendant acted intentionally or recklessly, 2) the conduct was extreme and outrageous, 3) the actions of the defendant caused the plaintiff emotional distress, and 4) the emotional distress suffered by the plaintiff was severe. *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993). Courts must determine as a threshold matter whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. *Brewerton v. Dalrymple*, 997 S.W.2d 212, 216 (Tex.1999). To be extreme and outrageous, conduct must be so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Id.* The test for determining what conduct is extreme and outrageous is essentially a subjective one. *Twyman*, 855 S.W.2d at 629 (Hecht, J., concurring and dissenting). The fact that an act is intentional or malicious does not make it extreme and outrageous for purposes of this tort. *Id.* at 215. Insensitive or rude behavior does not amount to outrageous behavior. *Gaspard v. Beadle*, 36 S.W.3d 229, 238 (Tex.App.—Houston [1st Dist.] 2001, pet. denied). Mere insults, indignities, or other trivialities do not rise to the necessary level of extreme and outrageous conduct. RESTATEMENT (SECOND) OF TORTS § 46 cmt.

d (1965). Plaintiffs are expected to be hardened to occasional inconsiderate and unkind acts. *Id.* In determining whether certain conduct is extreme and outrageous, courts consider the context and the relationship between the parties. *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex.1999). Considering only the evidence and inferences tending to support the trial court's finding that Springer's conduct was extreme and outrageous as those terms are used in the context of the tort of intentional infliction of emotional distress, we consider whether Appellants' motion should have been granted.

### The Complained-of Conduct

In her petition, Chason complains of two specific, isolated incidents. The first incident happened on the first day of an administrative hearing held in a matter between her husband and the City of Palestine. A portion of the discussion at that hearing centered on photographs of Chason that had been taken by her husband using a city owned digital camera. In some of the photos, Chason was wearing lingerie. In one of the photos, she was topless, although her face did not show. Springer had the photo in which Chason appeared topless enlarged to poster size.

The hearing was held at the Palestine Public Library. Chason testified that at the end of the day, as the parties were leaving the hearing, Springer looked at her, picked up the poster, put it under her arm, looked at her again, turned the poster so the image faced out toward Chason, smiled, and left the room. Springer then walked into the foyer where she stood for five to ten minutes visiting with her clients as library patrons entered and exited the library. During this time, Springer looked at Chason and smiled. Springer then walked to the parking lot where she stood,

talking to her clients, for an additional fifteen to twenty minutes. Several times, Springer turned to look at Chason. Springer's legal assistant then placed the poster in the trunk of Springer's car. Chason testified that the poster was not covered while Springer was carrying it. Chason characterized Springer's actions as a personal attack, made knowingly, with the specific intent to hurt her. Brian Chason's attorney, William Curley, testified that he saw Springer carrying the uncovered photo facing out so that people could see it after the hearing.

The second incident involved a conversation between Springer and Michael Roark, a local newspaper reporter. During the second day of the hearing, Chason was sitting outside the hearing room with her best friend, Jamie Long. According to Long's testimony, Springer came out of the hearing room, looked at Chason, then saw Roark, laughed, and told him she had some photographs she would like to sell him. Long characterized Springer's conduct as humiliating, degrading, and intimidating. Roark testified that he got the impression that Springer was waiting for him to walk up so she could make the comment in order to upset Chason.

### Context

The context in which these two incidents arose is important to our analysis. Chason is a long time resident of Palestine, Texas where she works as the manager of a local restaurant. She is active in her church, and has enjoyed a good reputation in the community. Understandably, even before the administrative hearing, Chason was concerned that the photographs her husband had taken might become public.

She described how distraught she had been when she first learned that some police officers had discovered the photographs on the City's laptop computer, especially since she had specifically instruct-

ed her husband to delete the photographs from the City's computer before returning it. She was so concerned that they would be viewed by still more officers that she personally met with the chief of police to ask him to make sure the photos were not passed around the department or discussed among the officers. She also explained that she had been very upset to find out that two babysitters, ages ten and twelve, had perused the computer files on Chason's personal computer and somehow found the photographs. Chason then had to discuss the photos with the babysitters' mothers.

The photos were further publicized during the course of the employment dispute between Chason's husband and the City of Palestine. The City had terminated her husband and he appealed that decision which resulted in a three-day hearing held at the public library. While Chason was not a party to that proceeding and therefore not allowed to remain inside the hearing room, she was present, seated just outside the hearing room. The events of the hearing, including a reference to the photos which were placed into evidence, were reported in the local newspaper, and had even been discussed on what Chason described as "a big gossip web site." Matters that Chason referred to as family secrets were brought out during the hearing, including details of an extra-marital affair her husband had engaged in. Thus, the record shows that the photos, or information about them, were disseminated in many different ways, including, but not limited to, the complained-of conduct of Springer.

██ ██ Understandably, the entire unpleasant ordeal concerning her husband's termination, the fear of the potential dissemination of their personal photographs, and their public marital problems would all be very upsetting to Chason. However,

we cannot confuse the elements of the severity of the plaintiff's distress with the severity of the defendant's conduct. In considering whether Springer's conduct was extreme and outrageous, Chason's level of distress does not factor in and we make no comment regarding that element of her cause of action. Moreover, the fact that an act has the effect of causing one to experience emotional distress, does not in and of itself, compel a court finding that the act itself was extreme and outrageous.

### Discussion

The threshold for what constitutes extreme and outrageous conduct sufficient to give rise to the tort of intentional infliction of emotional distress is a difficult one to meet. To guide us in our determination of whether Springer's conduct is actionable, we have reviewed numerous Texas cases in which the plaintiff alleged intentional infliction of emotional distress and the courts were required to assess whether the defendant's conduct met the threshold of extreme and outrageous conduct.

In the employment context, behavior has, in some instances, been found to be extreme and outrageous where the supervisor's unwanted behavior continued over a period of time. In *Fields v. Teamsters Local Union No. 988*, 23 S.W.3d 517 (Tex. App.—Houston [1st Dist.] 2000, pet. denied), the employer threatened to fire the employee if she did not succumb to his sexual advances. The harassment took place over a three month period. The appellate court reversed a summary judgment in favor of the employer, determining it could not be held that his behavior did not as a matter of law rise to the requisite level of extreme and outrageous. *Id.* at 531–33. In *GTE Southwest v. Bruce*, the Supreme Court held that the supervisor's ongoing acts of harassment, intimidation, and humiliation and his daily vulgar and

obscene behavior rose to the requisite level. *Bruce*, 998 S.W.2d at 612–13. In *Dean v. Ford Motor Credit Company*, 885 F.2d 300 (5th Cir.1989), the Fifth Circuit Court of Appeals held that an employer who, in addition to other improper acts, caused an innocent employee to be subject to an accusation of crime and put in fear that she might be accused of a crime is extreme and outrageous conduct. *Id.* at 307.

Conduct occurring over an extended period of time in contexts other than employment has also been identified as extreme and outrageous conduct. The Dallas Court of Appeals found a husband's mental and physical abuse of his wife throughout their marriage to constitute extreme and outrageous conduct. *Toles v. Toles*, 45 S.W.3d 252, 262 (Tex.App.—Dallas 2001, pet. denied). In *Gonzales v. Willis*, 995 S.W.2d 729 (Tex.App.—San Antonio 1999, no pet.), the defendant led the plaintiff to believe he would help her get a job at his place of employment. The two spoke over the phone and in person several times. The defendant repeatedly initiated sexually explicit conversations and made sexual advances in spite of the plaintiff's clear protests. He suggested that he would help her get the job she wanted in return for sexual favors. He also encouraged the plaintiff's coworkers to convey indecent propositions to her. The San Antonio Court of Appeals agreed with the jury's determination that this conduct was extreme and outrageous. *Id.* at 736.

Courts have also identified certain isolated incidents as meeting the threshold for extreme and outrageous conduct. The Supreme Court reviewed a summary judgment granted in favor of the defendant in *Morgan v. Anthony*, 27 S.W.3d 928 (Tex. 2000). There, the plaintiff's car was experiencing mechanical difficulties on a highway between two towns. Plaintiff was driving on the shoulder at five miles per hour when her car died and the defendant stopped to offer his assistance. In the process he also made suggestive comments, making it clear that he was interested in more than helping her with car repairs, and he continued to pursue her even after she declined his assistance. After describing in detail the defendant's actions, the Supreme Court said that it had "no difficulty in concluding that there is evidence of conduct" that is extreme and outrageous. *Id.* at 931. The Corpus Christi Court of Appeals reversed a directed verdict entered in the defendant's favor in *Escalante v. Koerner*, 28 S.W.3d 641 (Tex.App.—Corpus Christi 2000, pet. denied). Escalante gave birth by caesarian section to one healthy twin. The other twin had died in utero and Koerner, her doctor, told Escalante the fetus had been "reabsorbed" and therefore there was nothing left to bury. Escalante later learned that was not true. The remains had been disposed of as surgical waste in spite of Koerner's knowledge that Escalante and her husband wanted to bury whatever remained of the fetus. The Corpus Christi court determined that the trial court erred in finding the doctor's conduct was not extreme and outrageous as a matter of law. *Id.* at 647–48. The Fort Worth Court of Appeals affirmed a jury's determination that a car dealership intentionally inflicted emotional distress on a customer through the use of its sales techniques. *George Grubbs Enters. v. Bien*, 881 S.W.2d 843, 853–54 (Tex.App.—Fort Worth 1994), *rev'd on other grounds*, 900 S.W.2d 337 (Tex.1995). The dealership induced the customer to write a check through misrepresentation, then detained him for four hours, exerting constant pressure on him to go through with the sale. *Id.*

Conversely, we have found an even greater number of cases in which the courts found the defendant's conduct did

not rise to the requisite level to allow recovery for intentional infliction of emotional distress. In *Wornick Co. v. Casas*, 856 S.W.2d 732 (Tex.1993), the Supreme Court held that an employer's conduct in firing an employee for allegedly possessing incriminating information and in escorting her off the premises with a security guard was not extreme and outrageous conduct. *Id.* at 735. An attorney's act of ending a relationship with a client and then sending her a bill for past legal services is not extreme and outrageous conduct. *Gaspard*, 36 S.W.3d at 237–38. Questioning an employee about an alleged theft until she cries is not extreme and outrageous conduct. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995). A caseworker's discussion with the distraught mother of a sexually abused child regarding the child's sexual activity and the need to place the child in foster care on a permanent basis was deemed not to be extreme and outrageous conduct. *Mattix–Hill v. Reck*, 923 S.W.2d 596, 598 (Tex. 1996). A nurse who interviewed a rape victim, who was a minor, in the public waiting area of the hospital's emergency room in a rude and insensitive manner did not behave in an extreme and outrageous manner. *C.M. v. Tomball Regional Hosp.*, 961 S.W.2d 236, 245 (Tex.App.—Houston [1st Dist.] 1997, no writ).

There are several cases reviewing an employer's behavior towards an employee over time in which each court found the behavior did not rise to the requisite level of extreme and outrageous conduct. The Dallas Court of Appeals held that allegations that a supervisor went out of his way to stare at an employee with a hateful look in his eyes or in an intimidating way is not extreme and outrageous conduct. *Williams v. Northrop Grumman*, 68 S.W.3d 102, 114 (Tex.App.—Dallas 2001, no pet.). This Court has held that an employer's rudeness, anger, and criticism directed at an employee is not extreme and outrageous conduct. *Wal–Mart Stores, Inc. v. Bertrand*, 37 S.W.3d 1, 13–15 (Tex.App.—Tyler 2000, pet. denied). The Corpus Christi Court of Appeals has held that allegations that a supervisor asked an employee if she did her best work in the dark, discussed a sexually explicit article, and looked at her in a way that made her feel as if he was undressing her were not outrageous as a matter of law. *Garcia v. Andrews*, 867 S.W.2d 409, 410 (Tex.App.—Corpus Christi 1993, no writ). Even though it considered a physician's behavior morally unjustifiable, the Beaumont Court of Appeal nonetheless found his conduct, an apparent attempt to have a hospital administrator fired for his own personal reasons, did not rise to the requisite level. *Lassiter v. Wilkenfeld*, 930 S.W.2d 803, 807–08 (Tex.App.—Beaumont 1996, writ denied). Finally, the Fifth Circuit has held that although the defendant's actions constituted racial harassment, a condemnable and possibly illegal action, it did not rise to the level of extreme and outrageous conduct under Texas law. *Walker v. Thompson*, 214 F.3d 615, 628 (5th Cir.2000).

If we were to consider these cases as demonstrating a spectrum with cases involving conduct meeting the threshold for extreme and outrageous conduct at one end, and behavior falling short of the threshold at the other end, we would have to place the instant case at the latter end of the spectrum. The case before us does not contain the sort of flagrant or heinous facts, as described above, that led the various courts to determine the defendants there involved had indeed engaged in extreme and outrageous conduct. Springer made no indecent propositions to Chason. *See Morgan*, 27 S.W.3d at 931; *Gonzales*, 995 S.W.2d at 736. Springer did not engage in vulgar or obscene behavior. *See Bruce*, 998 S.W.2d at 612–13. Springer

did not attempt to deceive Chason in order to further a personal interest. *See Gonzales,* 995 S.W.2d at 736. Other than perhaps some temporary mental anguish, Springer's acts carried no logically foreseeable negative consequences. *See Dean,* 885 F.2d at 307. Springer did not threaten, coerce, or physically abuse Chason. *See Toles,* 45 S.W.3d at 262; *Bien,* 881 S.W.2d at 853–54. Finally, Springer's actions did not involve any fraud. *See Escalante,* 28 S.W.3d at 647–48; *Bien,* 881 S.W.2d at 853.

Chason has complained of two isolated incidents, not a prolonged series of acts. They occurred in the adversarial context of litigation in which Springer represented a party that had fired Chason's husband from his job for, among other infractions, allegedly using city equipment for personal use, including photographing Chason with her consent. The incidents involved a trial exhibit which, due to the nature of the photo from which it was made, was grainy and unclear. It showed a headless torso not easily identifiable as Chason. Further, the acts were essentially passive. Springer never spoke to Chason or physically touched her. *See Williams,* at 114. Even though the complained-of acts may have been deliberate or even malicious and calculated to humiliate Chason, we do not believe the acts rise to the level of extremeness and outrageousness required by the Texas Supreme Court. *See Brewerton,* 997 S.W.2d at 215. Although arguably unjustifiable, the acts do not rise to the requisite level. *See Lassiter,* 930 S.W.2d at 808. Essentially, Springer was doing her job, albeit perhaps poorly. *See Reck,* 923 S.W.2d at 598; *Johnson,* 891 S.W.2d at 644; *C.M.,* 961 S.W.2d at 245. While such alleged acts could be characterized as rude and unprofessional, such insensitive indignities do not, as a matter of law, meet the threshold for outrageous and extreme conduct as required to permit re-covery for intentional infliction of emotional distress as defined by the Texas Supreme Court. *See id; Gaspard,* 36 S.W.3d at 238; RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965).

### CONCLUSION

We conclude, therefore, that the trial court should have granted Appellants' motion for directed verdict because Springer's conduct did not rise to the level of extreme and outrageous conduct necessary to satisfy this required element of the tort of intentional infliction of emotional distress. We sustain Appellants' first issue and find it unnecessary to consider their remaining issues. We reverse the trial court's judgment and render judgment that Chason take nothing on her claim for intentional infliction of emotional distress. *See* TEX.R.APP. P. 43.3.