NO. 12-03-00251-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
TOM CLAYTON, M.D., a/k/a                             §   APPEAL FROM THE 145TH
CHARLES T. CLAYTON, M.D.,
a/k/a THOMAS M. CLAYTON,
APPELLANT
§JUDICIAL DISTRICT COURT OF
V.

SUSAN WISENER,
APPELLEE                                                          §   NACOGDOCHES COUNTY, TEXAS
                                                                                                                                                            
OPINION
            In six issues, Appellant Tom Clayton, M.D. challenges the trial court’s entry of a judgment
awarding $91,488.00 in actual damages and $200,000.00 in exemplary damages to Appellee Susan
Wisener. We affirm in part and reverse and render in part.
 
Background
            In 1995, Wisener went to work for Medaphis Physicians Services Corporation, a medical
billing service company, as an account representative. Dr. Clayton contracted with Medaphis to
perform his billing and collections for his radiology practice, and Wisener was assigned to his account. 
According to Wisener, in November of 1995, Dr. Clayton began calling her, making offensive
comments, as well as propositions of a sexual nature, and asking inappropriate questions about her sex
life with her husband. 
            In April of 1996, Wisener became ill and was admitted to Nacogdoches Medical Center for
diagnostic testing. During her stay in the hospital, Wisener underwent a HIDA scan to determine if
she had problems with her gallbladder. Dr. Clayton read the results of her HIDA scan and reported
that the scan was normal. Wisener continued to suffer from abdominal pain and sought a second
opinion. Her treating physicians concluded that her gallbladder was abnormal and removed the
gallbladder. 
            On July 1, 1998, Wisener sued Dr. Clayton, alleging his conduct invaded her privacy.


 
Specifically, Wisener alleged that Dr. Clayton, among other things, 1) asked her about her sex life with
her husband, 2) asked if she “ran around on [her] husband,” 3) told her to show him different private
parts of her body, 4) told her to perform various sex acts on him, 5) told her he wanted to touch
different parts of her body, and 6) propositioned her for sex. Wisener sought actual and exemplary
damages from Dr. Clayton for his actions. 
            On July 21, Dr. Clayton answered Wisener’s suit with a general denial. Wisener amended her
petition on January 19, 2000 and included an allegation that Dr. Clayton’s actions constituted
intentional infliction of emotional distress. She continued to seek actual and exemplary damages. 
            Wisener’s case went to trial on March 24, 2003. At the conclusion of the trial, the jury 
returned a verdict in favor of Wisener, finding that Dr. Clayton intentionally inflicted emotional
distress on Wisener and intentionally intruded on her private affairs. The jury awarded Wisener
$20,000.00 for past mental anguish and $72,488.00 for past lost earning capacity. The jury also found
that the harm to Wisener resulted from malice and awarded her $500,000.00 in exemplary damages.



            On May 30, 2003, Dr. Clayton filed motions for new trial, judgment notwithstanding the
verdict, and to modify the judgment, all of which were denied on July 8. He timely perfected this
appeal.
 
 
 
Legal and Factual Sufficiency
            In his first issue,


 Dr. Clayton contends that the evidence was legally and factually insufficient
to support the jury’s findings of liability on Wisener’s intentional infliction of emotional distress and
invasion of privacy claims. He also contends that the evidence was insufficient to support the jury’s
award of damages for mental anguish and past lost earning capacity. In his second issue, Dr. Clayton
contends that each of the jury’s findings are immaterial and should be disregarded because the evidence
to support each finding is legally and factually insufficient. Dr. Clayton makes the same arguments in
issues one and two; therefore, we will consider them as one issue.
Standard of Review 
            In reviewing a legal sufficiency or no evidence complaint, the appellate court must consider only
the evidence and inferences tending to support the challenged findings and disregard all evidence and
inferences to the contrary. If there is more than a scintilla of evidence to support the challenged
findings, the no evidence challenge fails. Leitch v. Hornsley, 935 S.W.2d 114, 118 (Tex. 1996). We
may sustain a “no evidence” point only when the record discloses one of the following: (1) there is a
complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from
giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital
fact is no more than a mere scintilla of evidence, or (4) the evidence establishes conclusively the
opposite of a vital fact. See Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). 
It is not within our province to second guess the fact finder unless only one inference can be drawn from
the evidence. See Havner v. E-Z Mart Stores, Inc., 825 S.W.2d 456, 461 (Tex. 1992). If the evidence
furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact’s
existence, more than a scintilla of evidence exists. Burroughs Wellcome v. Crye, 907 S.W.2d 497, 499
(Tex. 1995); Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983).
            When conducting a factual sufficiency review, we must consider all of the evidence, including
any evidence contrary to the verdict. Plas-Tex., Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex.
1989). Furthermore, we must reverse on the basis of factual insufficiency if the court’s finding is so
against the great weight and preponderance as to be manifestly unjust. Pool v. Ford Motor Co., 715
S.W.2d 629, 635 (Tex. 1986). This court is not a fact finder and may not pass on the credibility of the
witnesses or substitute its judgment for that of the trier of fact, even if a different conclusion could be
reached on the evidence. See Herbert v. Herbert, 754 S.W.2d 141, 144 (Tex. 1988); Clancy v. Zale
Corp., 705 S.W.2d 820, 826 (Tex. App.–Dallas 1986, writ ref’d n.r.e.). When a party without the
burden of proof on an issue challenges the factual sufficiency of the evidence, the question is whether
insufficient evidence supports the complained-of finding. Gooch v. Am. Sling Co., 902 S.W.2d 181,
184 (Tex. App.–Fort Worth 1995, no writ). An assertion that the evidence is "insufficient" to support
a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary
is so overwhelming that the finding should be set aside and a new trial ordered. Garza v. Alviar, 395
S.W.2d 821, 823 (Tex. 1965). 
I. Intentional Infliction of Emotional Distress
            To recover damages for intentional infliction of emotional distress, a plaintiff must establish that
1) the defendant acted intentionally or recklessly, 2) the defendant’s conduct was extreme and
outrageous, 3) the defendant’s actions caused the plaintiff emotional distress, and 4) the resulting
emotional distress was severe. Hoffman-LaRoche Inc. v. Zeltwanger, 144 S.W.3d 438, 445 (Tex.
2004).
            A. Extreme and Outrageous Conduct 
            Dr. Clayton argues that the evidence was legally and factually insufficient to support a finding
that his conduct was extreme and outrageous. Extreme and outrageous conduct has been defined as
conduct “so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of
decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.” Twyman
v. Twyman, 855 S.W.2d 619, 621 (Tex. 1993). “Generally, liability for intentional infliction of
emotional distress has only been found in those cases in which a recitation of the facts to an average
member of the community would lead him to exclaim, ‘Outrageous!’” See Foye v. Montes, 9 S.W.3d
436, 440 (Tex. App.–Houston [14th Dist.] 1999, pet. denied). Liability does not extend to a defendant
who conducts himself toward others with mere insults, indignities, threats, annoyances, or other
trivialities. GTE Southwest v. Bruce, 998 S.W.2d 605, 612 (Tex. 1999). The test for determining what
conduct is extreme and outrageous is essentially a subjective one. Haynes & Boone, L.L.P. v. Chason,
81 S.W.3d 307, 309 (Tex. App.–Tyler 2002, pet. denied) (citing Twyman, 855 S.W.2d at 629 (Hecht,
J., concurring and dissenting)). 
            It is well recognized that a course of harassing conduct may support liability for intentional
infliction of emotional distress. Bruce, 998 S.W.2d at 615. When ongoing harassment is alleged, the
offensive conduct is evaluated as a whole. Id. It is for the court to determine, in the first instance,
whether a defendant’s conduct was extreme and outrageous. Zeltwanger, 144 S.W.3d at 445 (citing
Bruce, 998 S.W.2d at 616). But when reasonable minds may differ, it is for the jury, subject to the
court’s control, to determine whether, in the particular case, the conduct was sufficiently extreme and
outrageous to result in liability. Id.
            The cases discussing whether conduct is extreme and outrageous are as varied as the spectrum
of facts that could conceivably constitute the tort of intentional infliction of emotional distress. Courts
deciding these cases have had great difficulty in analyzing whether a set of facts rises to the level of
extreme and outrageous conduct, as evidenced by the Texas Supreme Court’s recent statement that
“[f]or the tenth time in little more than six years, we must reverse an intentional infliction of emotional
distress claim for failing to meet the exacting requirements of that tort.” See Creditwatch, Inc. v.
Jackson, 157 S.W.3d 814, 815 (Tex. 2005). The threshold for what constitutes extreme and outrageous
conduct sufficient to give rise to the tort of intentional infliction of emotional distress is therefore a
difficult one to meet. Chason, 81 S.W.3d at 311. 
            The record, viewed in the light most favorable to Wisener, reveals that from November or
December of 1995 to May of 1996, Wisener talked to Dr. Clayton three or four times a week. Wisener
contends that the following conduct by Dr. Clayton supports the jury’s finding that he intentionally
inflicted emotional distress upon her during that time period:
            1.         Around the first of December 1995, during business calls at work, Dr. Clayton began
asking Wisener personal questions such as her age, whether she was married, whether she had any
children, what her husband did for a living, and how much money he made. She thought these matters
were “none of his business.”
            2.         Toward the end of 1995, Dr. Clayton asked her about her sex life at home and if her
husband was happy with their sex life. He wanted to know how often she had sex with her husband and
wanted to know her breast size. He also wanted to know if she had affairs with other men. When
talking about sex, Dr. Clayton used the term “f**k” and also discussed “blow jobs.” He told her he
wanted to “f**k” at least ten times over a one month period.
            3.         In December 1995 or January of 1996, Dr. Clayton told her that he “wanted to go to a
motel room and f**k” and that he “wanted her ass.”
            4.         Dr. Clayton told Wisener that her breasts were big.
            5.         During Wisener’s hospital stay, Dr. Clayton told her to get her “ass out of bed and go
collect his money.” He also asked her to take her shirt off.
            6.         In late April or early May of 1996, after her surgery, Dr. Clayton still wanted to know
if she wanted to have sex with him and if “they hurt [her] breasts during the surgery.” 
            7.         Dr. Clayton intentionally misread her HIDA scan by stating that her gallbladder was
normal when her gallbladder was abnormal.
            Our opinion in Chason is helpful to determine whether this complained-of conduct was extreme
and outrageous. In that case, Lisa Chason obtained a jury verdict awarding her damages for intentional
infliction of emotional distress from Haynes & Boone, L.L.P. The award arose from the publication
of topless and other embarrassing photos of her by an attorney for Haynes & Boone, L.L.P. during and
immediately after an administrative hearing held in a matter between her husband and the City of
Palestine. Chason, 81 S.W.3d at 310. Chason also complained that during the second day of the
hearing, the attorney told a local newspaper reporter that “she had some photographs she would like to
sell him.” Id.
            In Chason, this court analyzed the holdings of other courts deciding whether conduct was
extreme and outrageous. Id. at 311-13. The cases in which the reviewing court upheld a finding of
extreme and outrageous conduct or found that summary judgment evidence created a fact issue on
extreme and outrageous conduct dealt with unwanted sexual advances or suggestions over a period of
time as well as conduct occurring within a short time period. See Morgan v. Anthony, 27 S.W.3d 928,
931 (Tex. 2000) (defendant’s sexually suggestive comments while attempting to offer assistance to
plaintiff whose car had died and continued pursuit of her after she declined such assistance created a
fact issue, thus necessitating reversal of summary judgment in favor of defendant); Bruce, 998 S.W.2d
at 612-13 (supervisor engaged in ongoing acts of harassment, intimidation, humiliation, daily use of
vulgarities, and obscene behavior); Fields v. Teamsters Local Union No. 988, 23 S.W.3d 517, 531-33
(Tex. App.–Houston [1st Dist.] 2000, pet. denied) (employer threatened to fire employee if she did not
succumb to his sexual advances; the conduct took place over a three-month period); Gonzales v. Willis,
995 S.W.2d 729, 736 (Tex. App.–San Antonio 1999, no pet.) (defendant repeatedly initiated sexually
explicit conversations and made sexual advances in spite of plaintiff’s protests, suggested he could help
her get a job in return for sexual favors, and encouraged co-workers to make indecent propositions to
her). 
            After discussing these cases, we observed that Chason complained of two isolated incidents,
not a prolonged series of acts. Chason, 81 S.W.3d at 314. In holding that the conduct in Chason was
not the sort of “flagrant or heinous facts” described in cases finding extreme and outrageous conduct,
we noted that the attorney did not 1) make any indecent propositions to Chason, 2) engage in vulgar or
obscene behavior, or 3) attempt to deceive Chason in order to further a personal interest. Id. at 313-14. 

            In the instant case, Dr. Clayton 1) made indecent propositions to Wisener, 2) engaged in vulgar
or obscene behavior, and 3) attempted to deceive Wisener by asking her to take her shirt off after telling
her that he needed to discuss the results of her test with her. The only evidence to the contrary is Dr.
Clayton’s testimony denying any of the actions described by Wisener. After reviewing the record, we
hold that Dr. Clayton’s continuous course of conduct was “so outrageous in character, and so extreme
in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly
intolerable in a civilized community”; therefore, the jury was within its province to judge his conduct. 
See Twyman, 855 S.W.2d at 621; Zeltwanger, 144 S.W.3d at 445. Under the facts of this case, we hold
that the above evidence constitutes more than a scintilla of evidence to support the finding that Dr.
Clayton’s conduct was extreme and outrageous. After reviewing all of the evidence, we also hold that
the finding that Dr. Clayton’s conduct was extreme and outrageous was not so weak or the evidence
contrary to the finding so overwhelming that the finding should be set aside and a new trial ordered. 
Dr. Clayton’s first issue, as it pertains to the legal and factual sufficiency of the evidence of his extreme
and outrageous conduct, is overruled. 
            B. Intent
            Dr. Clayton also argues that the evidence of his intent or recklessness was legally and factually
insufficient to support the verdict. Intentional infliction of emotional distress requires either that the
actor intend to cause severe emotional distress or that severe emotional distress is the primary risk
created by the actor's reckless conduct. Standard Fruit & Vegetable Co. v. Johnson, 985 S.W.2d 62,
63 (Tex. 1998). Intentional conduct requires a showing that the actor desired the consequences of his
act. Behringer v. Behringer, 884 S.W.2d 839, 842 (Tex. App.–Fort Worth 1994, writ denied);
LaCoure v. LaCoure, 820 S.W.2d 228, 233 (Tex. App.–El Paso 1991, writ denied). An actor is
reckless when he knows or has reason to know of facts that create a high degree of risk of harm to
another and deliberately proceeds to act in conscious disregard of, or indifference to, that risk. Twyman,
855 S.W.2d at 624. Intent may be inferred from the circumstances and the conduct of the actor, not just
from the overt expressions of intent by the actor. Toles v. Toles, 45 S.W.3d 252, 260 (Tex. App.–Dallas
2001, pet. denied). Of course, rarely will a defendant admit knowing of a substantial certainty that
emotional harm would befall the victim. Twyman, 855 S.W.2d at 623. Juries are free to discredit the
defendant's protestations that no harm was intended and to draw necessary inferences to establish intent.
Id.
            Dr. Clayton’s outrageous statements and actions indicate that they were done knowingly and
intentionally. Furthermore, Wisener testified that she repeatedly asked Dr. Clayton to leave her alone,
but he persisted in this course of conduct. See Morgan, 27 S.W.3d at 931. The only evidence against
this finding is Dr. Clayton’s testimony that he did not engage in any of the conduct described by
Wisener. After reviewing the evidence, we conclude that evidence of his intent and/or recklessness
amounted to more than a scintilla and that the jury’s finding was not so weak or the evidence contrary
to the finding so overwhelming that the finding should be set aside and a new trial ordered. Dr.
Clayton’s first issue, as it pertains to the legal and factual sufficiency of the evidence of his intent, is
overruled.
            C. Severe Emotional Distress
            Dr. Clayton next contends that he did not cause Wisener to suffer any severe emotional distress. 
He argues that her mental problems were ordinary and that her previous relationships were the cause
of those mental problems. Wisener contends that the evidence supporting the jury’s verdict was legally
and factually sufficient.
            In Bruce, the Texas Supreme Court discussed severe emotional distress and noted that
“[e]motional distress includes all highly unpleasant mental reactions such as embarrassment, fright,
horror, grief, shame, humiliation, and worry.” Bruce, 998 S.W.2d at 618. Severe emotional distress
is distress that is so severe that no reasonable person could be expected to endure it. Id. In finding the
evidence in support of severe emotional distress legally sufficient, the supreme court noted that the
plaintiffs in Bruce 
 
experienced a variety of emotional problems including crying spells, emotional outbursts, nausea, stomach
disorders, headaches, difficulty in sleeping and eating, stress, anxiety, and depression. The employees
testified that they experienced anxiety and fear because of [the defendant’s] continuing harassment,
especially his charges and rages. Each employee sought medical treatment for these problems, and all
three plaintiffs were prescribed medication to alleviate the problems. An expert witness testified that each
of them suffered from post-traumatic stress disorder.
 
 
Bruce, 998 S.W.2d at 618-19.
            Much like the plaintiffs in Bruce, Wisener testified that she suffered anxiety, depression,
problems in dealing with her anger, and marital and familial discord as a result of Dr. Clayton’s
constant harassment. She also stated that she sought medical treatment for these problems. 
            Kandy Stahl, Ph.D. is a clinical psychologist and chair of the psychology department at Stephen
F. Austin State University. She was hired by Wisener’s counsel to evaluate Wisener and testify as an
expert witness in psychology. Dr. Stahl testified that Wisener experienced a significant degree of
clinical depression and anxiety, which channeled into somatic symptoms such as headaches,
gastrointestinal difficulties, sleep disturbances, weakness, or fatigue. This evidence of Wisener’s
physical and mental problems is legally sufficient to support the jury’s finding that Dr. Clayton’s
conduct caused Wisener to suffer severe emotional distress. 
            According to Dr. Stahl, Wisener may have been emotionally vulnerable to the harassment
because (1) she had a history of being physically abused, (2) her ex-husband had problems with
substance abuse, and (3) she went through a custody battle in her first marriage for her first two
children. Although this evidence supports Dr. Clayton’s argument, we note that Dr. Stahl also testified
that Wisener has been able to resolve those issues and “overcome obstacles along the way.” After
reviewing the evidence, we conclude that evidence of Wisener’s severe emotional distress amounted
to more than a scintilla and that the jury’s finding was not so weak or the evidence contrary to the
finding so overwhelming that the finding should be set aside and a new trial ordered. Dr. Clayton’s first
issue, as it pertains to the legal and factual sufficiency of the evidence of Wisener’s severe emotional
distress, is overruled. 
II. Invasion of Privacy
            Dr. Clayton next argues that the evidence was legally and factually insufficient to support a
finding that he invaded Wisener’s privacy. Wisener contends that the evidence supports such a finding
because of Dr. Clayton’s sexual harassment and intentional misreading of her HIDA scan. 
            The charge to the jury in the instant case asked if Dr. Clayton intentionally intruded on
Wisener’s “solitude, seclusion or private affairs.” The elements of a cause of action for invasion of
privacy by intrusion on seclusion are 1) the defendant intentionally intruded on the plaintiff’s solitude,
seclusion, or private affairs, 2) the intrusion would be highly offensive to a reasonable person, and 3)
the plaintiff suffered injury as a result of the defendant’s intrusion. See Valenzuela v. Aquino, 853
S.W.2d 512, 513 (Tex. 1993); Phar-Mor, Inc. v. Chavira, 853 S.W.2d 710, 712 (Tex. App.–Houston
[1st Dist.] 1993, writ denied). The invasion-of-privacy tort is typically associated with either a physical
invasion of a person's property or eavesdropping on another's conversation with the aid of wiretaps,
microphones, or spying. GTE Mobilnet of S. Tex. Ltd. Pshp. v. Pascouet, 61 S.W.3d 599, 618 (Tex.
App.–Houston [14th Dist.] 2001, pet. denied); Wilhite v. H.E. Butt Co., 812 S.W.2d 1, 6 (Tex.
App.–Corpus Christi 1991, no writ); Cornhill Ins. PLC v. Valsamis, 106 F.3d 80, 85 (5th Cir. 1997),
cert. denied, 522 .U.S. 818, 118 S. Ct. 69, 139 L. Ed. 2d 30 (1997); Wilson v. Sysco Food Svcs. of
Dallas, Inc., 940 F.Supp. 1003, 1015 (N.D. Tex. 1996) (all citing Gill v. Snow, 644 S.W.2d 222, 224
(Tex. App.–Fort Worth 1982, no writ), overruled on other grounds by Cain v. Hearst Corp., 878
S.W.2d 577 (Tex. 1994)).
            In Cornhill, the Fifth Circuit Court of Appeals addressed a claim for invasion of privacy where
offensive comments and inappropriate advances were made toward the plaintiff. Cornhill, 106 F.3d
at 85. The court held that the plaintiff could not recover under an invasion of privacy cause of action
based on the intentional intrusion upon her solitude or private affairs because she did not allege a
“‘physical invasion of a person’s property or eavesdropping on another’s conversation with the aid of
wiretaps, microphones, or spying.’” Id. 
            The same analysis applies to the instant case. Wisener did not allege, nor did the evidence
show, that Dr. Clayton physically invaded her property or eavesdropped on one of her conversations. 
Furthermore, there is no evidence in the record that Dr. Clayton intentionally misread her HIDA scan. 
All of the medical experts testified that the results of Wisener’s scan were open to subjective
interpretation. If anything, the evidence demonstrated that Dr. Clayton was only negligent when he read
her HIDA scan and did not intentionally misread it in order to cause Wisener harm. Accordingly, Dr.
Clayton’s first issue, as it pertains to the legal sufficiency of the evidence to support the jury’s invasion
of privacy finding, is sustained. 
III. Actual Damages
            Dr. Clayton next challenges the legal and factual sufficiency of the evidence to support the jury’s
award of $20,000.00 for past mental anguish and $72,488.00 for past lost earning capacity.
            A. Mental Anguish
            To recover mental anguish damages, the plaintiff must introduce direct evidence of the nature,
duration, and severity of the mental anguish, thus establishing a substantial disruption in the plaintiff’s
daily routine. Parkway Co. v. Woodruff, 901 S.W.2d 434, 444 (Tex. 1995). Direct evidence may be
in the form of the plaintiff’s own testimony, that of a third party, or that of an expert. Id.
            We have already concluded that the evidence was legally and factually sufficient to support a
finding that Wisener suffered severe emotional distress. Therefore, we conclude that the evidence
amounts to more than a scintilla of evidence to support the award of mental anguish damages. Because
the evidence of mental anguish was uncontroverted, we also conclude that there is factually sufficient
evidence to support the jury’s findings and will not set aside the finding of the jury. See White v.
Sullins, 917 S.W.2d 158, 162 (Tex. App.–Beaumont 1996, writ denied) (holding that it is within the
province of the jury to resolve matters, such as mental anguish, that are necessarily speculative and not
subject to precise mathematical calculations). Dr. Clayton’s first issue, as it pertains to the legal and
factual sufficiency of the evidence to support the jury’s award of damages for past mental anguish, is
overruled. 
            B. Past Loss of Earning Capacity
            Lost earning capacity concerns the impairment to one's ability to work. Koko Motel, Inc. v.
Mayo, 91 S.W.3d 41, 51 (Tex. App.–Amarillo 2002, pet. denied). It entails the consideration of what
the plaintiff's capacity to earn a livelihood actually was and assesses the extent to which it was impaired. 
Id. Moreover, courts recognize that calculating the extent of impairment constitutes an exercise in
uncertainty. McIver v. Gloria, 140 Tex. 566, 169 S.W.2d 710, 712 (1943). So, much is left to the sound
discretion of the jury. Id. This does not mean that it may simply journey into the realm of conjecture. 
Quite the contrary, its decision must be based upon such facts as are available in the particular case. Id.;
Strauss v. Continental Airlines, Inc., 67 S.W.3d 428, 436 (Tex. App.– Houston [14th Dist.] 2002, no
pet.). The "damages [must also be] proved with that degree of certainty of which the case is
susceptible." McIver, 169 S.W.2d at 712. And, "where the plaintiff seeks special damages for loss of
his earning capacity in a particular business or profession, the amount of his earnings or the value of his
services in that business must be shown with reasonable certainty." Id.
            Next, the non-exclusive factors to be considered include the earnings of the injured party before
and after the incident. Id. Her stamina and ability to work with pain and the weakness and degenerative
changes that naturally result from the injury and from long-suffered pain also merit consideration. 
Mayo, 91 S.W.3d at 51. So too does logic compel that the potential of the individual, or her ability to
advance in skill, job, and pay, is also relevant, assuming that the potential can be reasonably extrapolated
from the evidence of the particular case. Id. 
            In the instant case, the record contains no evidence of Wisener’s earnings at the time she worked
for Medaphis or the value of her services. Accordingly, the jury’s award of $72,488.00 for past loss of
earning capacity was based on conjecture and cannot stand. Dr. Clayton’s first issue, as it pertains to
the legal and factual sufficiency of the evidence to support the award for past loss of earning capacity,
is sustained.
IV. Malice and Exemplary Damages
            In his final legal and factual sufficiency challenge, Dr. Clayton argues that there is no evidence
or, alternatively, factually insufficient evidence to support the jury’s finding that Dr. Clayton acted with
malice. We agree.
            Exemplary damages are authorized under the Texas Civil Practice and Remedies Code when the
claimant proves by clear and convincing evidence that the harm results from fraud, malice, or gross
negligence. Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a) (Vernon 2004). The charge in Wisener’s
case asked the jury if Dr. Clayton acted with malice as the predicate for exemplary damages. Under
current law, "malice" is defined as "a specific intent by the defendant to cause substantial injury or harm
to the claimant." Tex. Civ. Prac. & Rem. Code Ann § 41.001(7). At the time this case was tried,
however, "malice" was defined as

(A) a specific intent by the defendant to cause substantial injury or harm to the claimant; or 
(B) an act or omission: 
(I) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves
an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and 
(ii) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with
conscious indifference to the rights, safety, or welfare of others. 
 
 
Act of April 20, 1995, 74th Leg., R.S., ch. 19, § 1, 1995 Tex. Gen. Laws 108, 109, amended by Act of
June 11, 2003, 78th Leg., R.S., ch. 204, § 13.02, 2003 Tex. Gen. Laws 847, 887. 
            The definition of malice incorporates the objective and subjective elements of the malice
standard: “(1) viewed objectively from the standpoint of the actor, the act or omission must involve an
extreme degree of risk, considering the probability and magnitude of the potential harm to others, and
(2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in
conscious indifference to the rights, safety, or welfare of others.” Transp. Ins. Co. v. Moriel, 879
S.W.2d 10, 23 (Tex. 1994). The Texas Supreme Court has explained that extreme risk “means not a
remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious
injury to the plaintiff.” Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 785 (Tex. 2001). 
“‘[A]ctual awareness,’ means that the defendant knew about the peril, but its acts or omissions
demonstrated that it did not care.” Id. 
            Dr. Clayton’s conduct was extreme and outrageous; however, there is no clear and convincing
evidence in the record to support a finding that Dr. Clayton had an actual awareness that his conduct
exposed Wisener to an extreme risk of substantial harm and proceeded with conscious indifference to
her rights, safety, or welfare. See Dillard Dept. Stores, Inc. v. Silva, 148 S.W.3d 370, 373-74 (Tex.
2004). Because the record is devoid of the clear and convincing evidence of malice that the statute
requires, Dr. Clayton’s issue regarding the sufficiency of the evidence to support a finding of malice and
exemplary damages is sustained.
 
Evidentiary Rulings
            In his third issue, Dr. Clayton argues that the trial court erroneously admitted evidence of
Clayton’s prior sexual advances and comments toward other women. In his brief, he states that this
evidence was admitted through the testimony of twelve witnesses. Wisener contends that Dr. Clayton
waived any error. We agree.
            The general rule is that error in the admission of evidence is deemed harmless and is waived if
the objecting party subsequently permits the same or similar evidence to be introduced without objection. 
Volkswagen of America, Inc. v. Ramirez, 159 S.W.3d 897, 907 (Tex. 2004). The record reflects that
Dr. Clayton objected to some of the evidence regarding his prior conduct and that he did not object when
that same testimony was elicited later during the witnesses’ examination. Therefore, Dr. Clayton has
waived any error regarding the admission of evidence of his prior wrongs. Dr. Clayton’s third issue is
overruled.
 
 
Application of Settlement Credit
            Both parties agree that $43,020.23 is the amount that Wisener received from her settlement with
Medaphis. The trial court only applied $1,000.00 from that settlement toward the judgment against Dr.
Clayton. In his fourth issue, Dr. Clayton maintains that the trial court erred by applying only $1,000.00
from Wisener’s previous settlement with Medaphis toward the trial court’s judgment. Wisener argues
that the $1,000.00 settlement credit was proper.
            At the time Wisener’s case was tried, a defendant could elect to have a prior settlement by a
claimant credited toward a judgment in the amount of
 
(1) the sum of the dollar amounts of all settlements; or
(2) a dollar amount equal to the sum of the following percentages of damages found by the trier of fact:
(A) 5 percent of those damages up to $200,000.00;
(B) 10 percent of those damages from $200,000.01 to $400,000.00;
(C) 15 percent of those damages from $400,001 to $500,000.00; and
(D) 20 percent of those damages greater than $500,000.00.
 
 
Act of May 18, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. Laws 974, amended by Act of June
11, 2003, 78th Leg., ch. 204, §§ 4.06, 4.10(4), 2003 Tex. Gen. Laws 857-58.
            Section 33.014 of the Texas Civil Practice and Remedies Code mandated that if a defendant did
not make an election as to how the trial court would credit a previous settlement, all defendants were
considered to have elected subdivision (2) of section 33.012(b). Act of May 18, 1995, 74th Leg., R.S.,
ch. 136, § 1, 1995 Tex. Gen. Laws 974, repealed by Act of June 11, 2003, 78th Leg., ch. 204, § 4.10(6),
2003 Tex. Gen. Laws 858. Dr. Clayton did not file a written election as to which dollar credit should
have been applied; therefore, he is considered to have elected a credit under subdivision (2) of section
33.012(b). 
            We have sustained Dr. Clayton’s issues regarding the award of damages for past loss of earning
capacity and exemplary damages. The only remaining amount of damages found by the trier of fact is
the $20,000.00 award for mental anguish. Five percent of $20,000.00 is $1,000.00; thus, the trial court
did not err by applying $1,000.00 toward the judgment as a settlement credit and awarding her
$19,000.00 for mental anguish. Dr. Clayton’s fourth issue is overruled.



 
Conclusion 
            The evidence adduced at trial was legally and factually sufficient to support the jury’s finding
that Dr. Clayton intentionally inflicted emotional distress upon Wisener and to support the jury’s award
of $20,000.00 for mental anguish. However, the evidence was legally insufficient to support the jury’s
finding that Dr. Clayton invaded Wisener’s privacy by intruding on her seclusion. We also hold that the
evidence was legally and factually insufficient to support the jury’s finding of malice and the award of
exemplary damages. 
            Accordingly, we affirm the portion of the trial court’s judgment awarding Wisener $19,000.00
for mental anguish. We reverse the portion of the judgment awarding Wisener $72,488.00 for past loss
of earning capacity and $200,000.00 in exemplary damages and render judgment that Wisener take
nothing on those damage claims.
 
 
                                                                                        DIANE DEVASTO 
                                                                                                     Justice
 
 
 
Opinion delivered June 15, 2005.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.
 
 
 
 
 
 
 
 
 
 
 
(PUBLISH)